COMMONWEALTH of Pennsylvania, Appellee,

v.

Thomas Thompson BEY, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 4, 2002.

Filed Jan. 15, 2004.

Kirk J. Henderson, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before: HUDOCK, ORIE MELVIN and MONTEMURO *, JJ.

MONTEMURO, J.

¶ 1 This is an appeal from judgment of sentence of 10 to 20 years' imprisonment entered following Appellant's plea of *nolo contendere* to one count of involuntary deviate sexual intercourse.

¶ 2 The charges were brought when Appellant, then an employee of a convalescent center, was caught *in flagrante delicto* with a quadriplegic patient whose brain injury had left him without cognitive function. During the sentencing hearing, it was revealed that Appellant, who had fantasies of dominance in homosexual relationships, had tested positive for HIV approximately six weeks prior to the inci-

_____

* Retired Justice assigned to Superior Court.

dent. Because Appellant had volunteered to care for the totally defenseless victim, had otherwise arranged his schedule to afford him the opportunity of acting out his fantasies, and because the victim was in a "child-like state," (N.T., 5/16/01, at 14), the trial court found that Appellant was a sexually violent predator pursuant to 42 Pa.C.S.A. § 9795.4 (Megan's Law), despite a Sexual Offenders Assessment Board determination to the contrary.

¶ 3 On appeal, Appellant argues that the Commonwealth failed to prove by clear and convincing evidence that he is a sexually violent predator (SVP), and that for numerous reasons, Megan's Law is unconstitutional.

¶ 4 Section 9792 of Megan's law defines an SVP as

[a] person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) **due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.**

(emphasis added).

¶ 5 Section 9792 of the statute defines mental abnormality as "[a] congenital or acquired condition of a person that predisposes that person to the commission of criminal sexual acts to a degree that makes that person a menace to the health and safety of other persons." The same section defines predatory acts to those which are "directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." *Id.*

¶ 6 To identify an offender's status under the Act, section 9795.4(b) provides that such evaluation

[s]hall include, but not be limited to the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) **Any mental illness, mental disability or mental abnormality.**

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual assessment filed as criteria rea-

sonably related to the risk of reoffense.

(emphasis added).

¶ 7 The procedure used to identify as an SVP a person found guilty of a predicate felony is delineated in 42 Pa.C.S.A. § 9795.4(e)(3). That section requires that "[a]t the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator." Thus, this Court in *Commonwealth v. Krouse,* 799 A.2d 835, 838 (Pa.Super.2002) *(en banc), appeal denied,* 573 Pa. 671, 821 A.2d 586 (Pa.2003), determined that in testing the sufficiency of the evidence "regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." As is normally the case with sufficiency challenges, all of the evidence must be viewed in a light most favorable to the Commonwealth. *Id.*

¶ 8 In *Krouse,* the trial court accepted the finding of the Sexual Offenders Assessment Board that the appellant should be classified as an SVP. Acknowledging that "the *trial court* has the sole authority to determine a defendant to be an SVP," *id.* at 839 (emphasis original), we nevertheless found unproven by clear and convincing Commonwealth evidence the accuracy of the court's conclusion. The Board member who assessed Krouse had done so entirely on the basis of published studies; no interview had been held or polygraph administered. We found that none of the conclusions deemed most significant by the expert, that Krouse "had erections to males, was relatively young, and had not had stable sexual relationships," *id.* at 840, was supported by the necessary proof, particularly since nothing clearly and convincingly supported the prediction that Krouse was likely to reoffend. Moreover, and most tellingly, because of his lack of contact with Krouse, the expert admitted his inability to offer a diagnosis, the statutory *sine qua non* of SVP status. *See Commonwealth v. Williams,* 574 Pa. 487, 515, 832 A.2d 962, 978 (2003) *(Williams II )*("To the extent that the determination of sexually violent predator status is made based upon, not criminal activity, but a finding of mental abnormality or personality disorder, it is not applied to conduct at all, but to an individual's status as suffering from a serious psychological defect."). Finally, we opined that even if the expert's testimony was taken as true, Krouse did not qualify as an SVP because several statutory factors weighed against such a finding. Specifically, it was Krouse's first sexual offense, and his prior criminal conviction involved only substance abuse, a circumstance unrelated to the incident itself, nor was there evidence of force or cruelty. We also concluded that "the record does not substantiate any prior incidents involving deviant sexual behavior or mental health issues." *Krouse, supra* at 842.

¶ 9 In reversing the trial court's conclusion that Krouse was an SVP, we held that despite the statute's silence on the necessity of specific trial court findings, "the trial court should include on the record its reasons for finding the defendant to be an SVP **in relation to the statutory factors.**" *Id.* at 843 (emphasis added). Here, as in *Krouse,* the trial court failed to make such findings relative to that element, enumerated in section 9795.4. as mental illness, mental abnormality or mental disability, most germane to future dangerousness, instead categorizing Appellant as an SVP based on the egregiousness of Appellant's behavior given his HIV status and the victim's helplessness. Accordingly, here,

as in *Krouse,* we "must look to the entire record and determine whether the evidence in the record can be made to clearly and convincingly support the trial court's conclusion." *Id.* at 840.

¶ 10 The trial court, in assigning SVP status opined the following:

this Court, based upon a credibility determination, while accepting some of the facts contained in [the assessor's] report rejected his ultimate opinion as being unsupported by the facts of the case. Simply put, the Commonwealth proved that [Appellant] met the definition of a sexually violent predator by clear and convincing evidence.

(Trial Ct. Op. at 4).

¶ 11 Implicit in the court's position in this matter, as reflected in its acceptance of "facts" related in the assessor's report and its rejection of the assessor's psychological analysis, is the assumption that mental defect/personality disorder is discernible from Appellant's behavior. Moreover, the only testimony contained in the record is that of Appellant, as no other witnesses were called at either the sentencing hearing or at the hearing on Appellant's motion to modify his sentence. Expert delineation of a mental defect, which both the statute and *Williams II* require, is ignored except to the extent of the trial court's rejection of the Board member's assessment.

¶ 12 The record does reveal that the assessor reported a diagnostic impression of "Adjustment Disorder with Mixed Disturbance of Emotions and Conduct (# 309.4)," which, he states, "alone does not increase the probability to demonstrate sexually violent predatory behaviors." (Criminal Behavior Assessment of

Allan D. Pass, Ph.D., 3/10/01, at 8). In an addendum, the assessor discusses his receipt of an evaluation of Appellant performed for the purposes of a court-ordered presentence report by the Allegheny County Behavior Clinic which offered a diagnostic impression of "Axis I Paraphilia Narcissistic Traits Disorder." (Addendum, 3/16/01, at 1). The assessor then adds:

In my assessment which occurred on 3/10/01 I found no evidence during the assessment of the defendant or within the records to substantiate such a diagnostic impression. Specifically this DSM IV classification requires that sexual Paraphiliac behaviors manifest with a minimum of six months duration prior to the assessment (Criterion A). There appeared to be no evidence in the assessment to meet this standard. The defendant is a self admitted homosexual & homosexuality does not classify as a DSM IV disorder.

(*Id.*).

¶ 13 If the Commonwealth wished to espouse paraphilia, or indeed any other diagnosis, as more predictive than that offered by the Board's assessor, it could have presented a witness through whom to introduce that theory. Indeed, the Commonwealth could have called the assessor, who was present in court, so as to discredit his diagnosis and conclusions. Instead, the Commonwealth apparently accepted the assessment of the Board, noting, "[Appellant] has a minor mental diagnosis, but not one ... that would increase his probability to participate in sexually violent behaviors." (N.T., 5/16/01).[1]

¶ 14 The argument put forth by the Commonwealth is that each of the ele-

---

1. It should be noted that the Addendum containing the alternative diagnosis had been submitted and was available to the court at the time of the sentencing/Megan's law hearing.

ments of section 9795.4 is equally weighted, with none more significant than any others. This argument is somewhat disingenuous. All sexual crimes are inherently violent as invasions of the victim's bodily integrity, and differ only in the degree to which this is true. Predation is also a constituent factor in sexual offenses, as rarely if ever do the perpetrators of such crimes select victims they cannot, by strength, guile or other means, overpower. The salient inquiry, mandated by the statute, therefore, in determining SVP status is identification of the impetus behind commission of the offense, that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question determines, at least theoretically, the extent to which the offender is likely to reoffend, and section 9795.4 provides the criteria by which such likelihood may be gauged. Thus, predictors of future dangerousness, specifically mental illness, mental disability or mental abnormality as enumerated in § 9745.4(b)(3)(ii), however imperfect the science they represent, must, by the terms of the statute, be weighted more heavily than those factors which may carry less significant or no implications for potential behavior.

¶ 15 While it may be argued that all of the inquiries mandated by the statute are of equal importance because their express purpose is the prediction of future behavior, mental defects or personality disorders are discoverable and identifiable only by scientific methodology; there is no other reliable source for such information. Thus expert testimony as to the presence of the defect/disorder is required. Indeed, the Sexual Assessment Board is, by statute, accordingly comprised of "psychiatrists, psychologists and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders," 42 Pa.C.S.A. § 9799.3, and thus qualified to conduct that aspect of the discovery process.

¶ 16 In this case, because the diagnosis of the Board's expert, when applied to the facts was not one which lent itself to anticipation of future sexually criminal acts, the Board considered Appellant not to be an SVP. Specifically, and with reference to the elements of section 9795.4, at the time of the incident, Appellant was 53 years old, and had no prior history of sexual offenses.[2] This was the only victim, and no force was involved given the victim's (lack of) mental capacity. The trial court's finding of cruelty stemmed from the victim's incapacity, rather than from any specific act of Appellant, who was, as noted above, the victim's caregiver. Appellant consistently denied the influence of drugs and/or alcohol in commission of the crime. He was an acknowledged homosexual, who had been in three long term relationships, one of which lasted for 15 years, and all of which he described as abusive and hurtful to himself. Appellant explained the incident as fulfillment of his fantasy to be sexually dominant, and it occurred at a time when an interruption might, as did, happen when a nurse entered the victim's room during the assault.

¶ 17 The Board's assessor, as already mentioned, diagnosed Appellant with a condition unlikely to lead to further incidents of sexual predation, and the instant crime was described as "the result of an impulsive act of poor judgment & criminal-

---

2. The Commonwealth concedes that the trial court's reference to Appellant during the reconsideration hearing as "an individual who has a history of sexual offenses," (N.T., 8/16/01, at 8), is incorrect. He was convicted of retail theft in 1981 and 1999 and sentenced to time served for the latter. In 1990, he received 5 years' probation after a conviction for burglary, receiving stolen property and larceny.

ly opportunistic behavior utilizing the victims (sic) diminished capacity to not (sic) resist his sexual advances & to satisfy his own longstanding homosexual needs at the time." (Criminal Behavior Assessment at 7). The Commonwealth presented nothing to counter this appraisal.[3]

¶ 18 The trial court based its rejection of the assessor's conclusion on a "credibility determination." (Trial Ct. Op. at 4). While such a decision is undoubtedly for the fact finder, *Krouse, supra,* at 838, it does not compel, or even enable a corollary finding that the Commonwealth has produced the necessary quantum of clear and convincing evidence where in fact it has produced none at all. In *Krouse,* we reiterated our Supreme Court's observation in *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593, 607 (1999) (*Williams I* ), that "a subjective assessment of an offender's potential future dangerousness is a necessary inquiry in determining whether one is a sexually violent predator." *Krouse, supra,* at 840. Because the risk of error and the concomitant danger to individual liberties inherent in such a determination is greater than in an objective determination, the *Williams I* Court found that "requiring the prosecutor to affirmatively convince the court of the important facts can

be expected to materially reduce the risk of error." *Id.* at 608 (citing *E.B. v. Verniero,* 119 F.3d 1077 (3rd Cir.1997), *cert. denied,* 522 U.S. 1109, 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998)). Here, no proof of a mental defect or personality disorder which anticipates repetition of Appellant's crime has been offered. Thus the evidentiary standard has not been met, and the categorization of Appellant as an SVP cannot be sustained.

¶ 19 Appellant has raised multiple constitutional challenges to aspects of Megan's Law which remain after our Supreme Court's decision in *Williams II, supra.* We need not address his claims since we have resolved this matter on other grounds. *In re Fiori,* 543 Pa. 592, 673 A.2d 905, 909 (1996); *Krouse, supra,* at 837.

¶ 20 Judgment of sentence in regard to the designation of Appellant as a sexually violent predator is Reversed. Judgment of sentence is Affirmed.

---

**3.** The Commonwealth argues that "if the Assessment Board Member's conclusion on [SVP status] were the final word, there would be no need for a hearing."(Appellee's Brief at

10). Specifically because the hearing is not *pro forma* the Commonwealth is responsible for producing evidence in support of its position.