**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Walter PLUCINSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 12, 2004.
Filed Jan. 28, 2005.

Heather N. Orisko, York, for appellant.

Michael R. Roland, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: HUDOCK, GANTMAN, and BECK, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Walter Plucinski, appeals from his judgment of sentence and asks us to determine whether the court erred in classifying him as a sexually violent predator ("SVP"). Specifically, Appellant challenges the sufficiency of the evidence to establish the statutory elements necessary to his SVP classification; namely, that he suffers from a mental abnormality or personality disorder making him likely to engage in predatory violent sexual offenses. After careful review, we hold the evidence was insufficient to support Appellant's SVP classification. Accordingly we reverse and vacate the judgment of sentence as to Appellant's SVP classification; we affirm the judgment of sentence in all other respects and remand the matter to the trial court to determine Appellant's new registration requirements.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Appellant is the victim's step-father, who married the victim's mother in 1996, when

the victim was eight years of age.[1] In 2001, Appellant and the victim's mother began experiencing marital difficulties.

¶ 3 In April 2002, Appellant started committing sexual offenses against his then fourteen year-old stepdaughter. The first episodes of touching involved Appellant massaging her feet. In subsequent episodes, he kissed her feet and toes. Over time, these activities included rubbing her feet on his penis through his trousers. Later, he exposed his penis and masturbated in her presence. Eventually, he orally and digitally penetrated her vagina. He also fondled her breasts and buttocks. He did not penetrate her vagina with his penis. Some of the assaults occurred while the victim was under the influence of Oxycontin or other prescription narcotics. The drugs were not supplied by Appellant. The assaults continued until October 2002, when the victim reported them to her mother. The police arrested Appellant and charged him with numerous offenses.

¶ 4 On August 19, 2003, in exchange for the promise of an aggregate sentence of 5 to 10 years' imprisonment and dismissal of the remaining charges, Appellant pled guilty to rape,[2] involuntary deviate sexual intercourse (IDSI),[3] indecent assault,[4] aggravated indecent assault,[5] statutory sexual assault,[6] and corruption of minors.[7] The court directed the preparation of a SVP assessment by the sexual offenders assessment board and scheduled a hearing to determine Appellant's SVP status under Megan's Law II, 42 Pa.C.S.A. §§ 9791–9799. The board evaluator, licensed psychologist Gregory Loop, M.A., completed the assessment and submitted a five-page report in November 2003. The report was based on Mr. Loop's review of the court records, victim impact statements, police records, past criminal offenses, treatment histories, and information obtained during an interview conducted with Appellant in the presence of counsel. Upon compilation of the above information, Mr. Loop clinically evaluated it in light of unidentified literature regarding "sex offense behavior and sex offense recidivism[.]" (N.T. SVP/Sentencing, 3/31/04, at 4). Based on his review and evaluation, Mr. Loop determined Appellant was a SVP.

¶ 5 At the SVP hearing, conducted immediately prior to sentencing, the court qualified Mr. Loop as an expert in SVP assessment. Mr. Loop testified Appellant suffers from "hebephilia," which he characterized as a sub-category of "paraphilia," not included in the DSM–IV or DSM–IV–TR.[8] (*Id.* at 19). Mr. Loop defined "hebephilia" as a mental abnormality manifested by a persistent sexual arousal to adolescent children. (*Id.* at 8). On cross-examination, the following exchange took place:

DEFENSE COUNSEL: Is Hebephilia described anywhere within the DSM–IV–TR?

THE WITNESS: No, it is not.

---

1. The victim's date of birth is July 9, 1987.

2. 18 Pa.C.S.A. § 3121.

3. 18 Pa.C.S.A. § 3123(a)(6).

4. 18 Pa.C.S.A. § 3126(a)(7).

5. 18 Pa.C.S.A. § 3125(a)(1), (4).

6. 18 Pa.C.S.A. § 3122.1.

7. 18 Pa.C.S.A. § 6301(a).

8. The DSM–IV–TR (Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision), published in 2000, is a revision and replacement of the DSM–IV; *i.e.,* the fourth edition of the manual published by the American Psychiatric Association to set forth diagnostic criteria, descriptions and other information to guide classification and diagnoses of mental disorders.

DEFENSE COUNSEL: Where do we go for a definition of hebephilia?

THE WITNESS: In the sexual offender literature. There's a number of paraphilias that aren't itemized in the DSM–IV–TR.

DEFENSE COUNSEL: So, hebephilia is some type of paraphilia other than exhibitionism, fetishism, frotteurism, pedophilia, sexual masochism, sexual sadism, transvestic fetishism and voyeurism?

THE WITNESS: Yes.

DEFENSE COUNSEL: And that was your conclusion with regard to [Appellant's diagnosis], is that correct?

THE WITNESS: That's correct.

(*Id.* at 19).

¶ 6 Further, Mr. Loop opined Appellant's conduct was predatory in nature. He testified as follows:

The other issue I wanted to look at clearly is whether a relationship here had been established or promoted with any kind of intent. It appeared that the relationship began to be promoted for the intent of sexual behavior, and both from the [Appellant's] statements about his no longer being sexually active with his spouse and viewing this 14 year old as a sexual outlet and the behaviors that certainly continued to promote that relationship in that he would go into her room late at night, he would go downstairs with her when it was just the two of them, he would, in fact, write her letters talking about how he desired her and found her attractive and how her perfume smelled nice, and it clearly was the kind of relationship that one would see as a sexual relationship. He also talked about feeling like he could talk to her and she could understand him better, and there was this emotional connection that existed, and he was clearly establishing an other than fatherly relationship and promoting a relationship here for the purposes of being able to be sexual with her.

(*Id.* at 9). Based on the foregoing, Mr. Loop concluded:

[Appellant] met the criteria for sexually violent predator, which was that he did, in fact, have a mental abnormality related to sexually acting out and, specifically that would make him more likely to engage in sexual behaviors in the future, and paraphilia is certainly are [sic] those very specific kinds of mental abnormalities that make it more likely that people would sexually act out, and the fact that he promoted this relationship for the purpose of being able to sexually victimize her I found to a reasonable degree of professional certainty that he, in fact, did meet the criteria of a sexually violent predator. So I made that recommendation.

(*Id.* at 10).

¶ 7 Appellant presented the expert testimony of Janet Schaeffer, Ph.D., a licensed, clinical psychologist. Dr. Schaeffer testified she was unfamiliar with the disorder "hebephilia" for diagnostic purposes. (*Id.* at 38). Dr. Schaeffer conducted three separate interviews with Appellant and administered two diagnostic tests: the Minnesota Multiphasic Personality Inventory II and the Sexual Violence Risk 20. (*Id.* at 25). Her diagnosis for Appellant was "Rule out paraphilia, not otherwise specified, pedophilia." (*Id.* at 32). Dr. Schaeffer explained the diagnosis as follows:

[T]he important thing is the 'rule out,' which is that he doesn't strictly speaking meet the criteria [for pedophilia] because the criteria in the DSM–IV has a cutoff of age 13 for the age of the victim, and the victim in this case is older. However, she is underage—he did en-

gage with her sexually over a period of six months, and in that regard he does meet the criteria. However, he is not in my opinion what we would call a fixated pedophile who is only attracted to children, who cannot have or does not want to have relationships with adults, and to rule out means you would consider it but you need more information, and we don't have more information now.

(*Id.* at 32). Dr. Schaeffer additionally testified:

[I]f you look at the law, and I am looking at it right now, it refers to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexual violent offenses. Well, 'likely to engage' speaks to future behavior, and in my opinion [Appellant] is at a very low risk to continue to engage in these types of behaviors based on the information I collected, and although his relationship with the victim clearly changed over time, for the first seven years of his knowing the victim, he was her stepfather first and foremost. The relationship with the victim was not primarily established for predatory purposes at all.

(*Id.*) Dr. Schaeffer opined that, to a reasonable degree of professional certainty, Appellant "does not meet the criteria as a sexually violent predator under Megan's Law [II]." (*Id.*)

¶ 8 Additionally, both expert witnesses examined the assessment factors set forth in Section 9795.4 of Megan's Law II, and applied them to the instant case. Both experts agreed:

1) the offenses did not involve multiple victims;

2) the offenses did not involve unnecessary means;

3) the offenses did not involve threats;

4) the offenses did not involve unusual cruelty;

5) the victim had a normal mental capacity;

6) the victim was under the influence of narcotics during some of the assaults;

7) Appellant had no prior convictions for sexual offenses;

8) Appellant had no failure to complete treatment;

9) Appellant's age suggests a decreased risk to re-offend.

(*Id.* at 13–16, 26–29).

¶ 9 The court expressed its findings of fact on the record and concluded "the Commonwealth has met its burden of proof. We do then rule that [Appellant] is classified as a sexually violent predator for registration purposes hereinafter." (*Id.* at 46). The court imposed the agreed upon sentence of 5 to 10 years' imprisonment and informed Appellant of his lifetime registration requirements. Appellant filed a timely notice of appeal and complied with the court's directive to file a concise statement of matters complained of on appeal within 14 days.

¶ 10 On appeal, Appellant raises one issue for our review:

WHETHER THE LOWER COURT ERRED IN CLASSIFYING THE APPELLANT A SEXUALLY VIOLENT PREDATOR WHERE THE COMMONWEALTH FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE APPELLANT IS A SEXUALLY VIOLENT PREDATOR PURSUANT TO 42 Pa.C.S.A. § 979[5.4], WHERE THE COMMONWEALTH PRESENTED INSUFFICIENT EVIDENCE AT THE HEARING TO DETERMINE WHETHER THE LOWER COURT SHOULD CLASSIFY THE APPELLANT A SEXUALLY VIOLENT PREDATOR?

(Appellant's Brief at 4).

■ ¶ 11 Appellant claims the Commonwealth's expert failed to establish the accu-

racy of the information contained in the unidentified documents he relied upon to reach a "hebephilia" diagnosis. (*Id.* at 13, 18). Appellant further claims, even if the diagnosis were accurate and supported by the evidence, the evidence failed to show Appellant would be likely to reoffend. (*Id.* at 19). Appellant additionally contends both experts agreed the offenses did not involve multiple victims, unnecessary means, threats, or unusual cruelty. (*Id.* at 25). He further points out both experts agreed this was Appellant's first sexual offense and that he had no history of failed treatment. (*Id.*) Moreover, Appellant posits both experts agreed his age suggests a decreased likelihood to reoffend. (*Id.*) Thus, Appellant concludes the court erred in classifying him a SVP, because the evidence did not clearly and convincingly show the existence of a "mental abnormality or personality disorder that makes [Appellant] likely to engage in future predatory sexual behavior." (*Id.* at 18). After careful review, we are constrained to agree.

■■■ ¶ 12 "[I]n reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." *Commonwealth v. Moody,* 843 A.2d 402, 407 (Pa.Super.2004) (quoting *Commonwealth v. Krouse,* 799 A.2d 835, 837 (Pa.Super.2002) (*en banc*), *appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003)); *Commonwealth v. Haughwout,* 837 A.2d 480, 484 (Pa.Super.2003). The evidence must be viewed in the light most favorable to the Commonwealth. *Krouse, supra* at 837. "The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court." *Commonwealth v. Meals,* 842

A.2d 448, 450 (Pa.Super.2004). "The clear and convincing standard requires evidence that is 'so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'" *Commonwealth v. Maldonado,* 576 Pa. 101, 109, 838 A.2d 710, 715 (2003) (quoting *Rohm and Haas Co. v. Continental Cas. Co.,* 566 Pa. 464, 476, 781 A.2d 1172, 1179 (2001)).

¶ 13 Under Megan's Law II, a SVP is defined as "a person who has been convicted of a sexually violent offense...and who is determined to be a sexually violent predator under section 9795.4...due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792. "Mental abnormality" is defined as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* "Predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." *Id.*

■■ ¶ 14 The determination of whether an individual should be classified as a SVP is also governed by the factors set forth in Section 9795.4:

§ 9795.4. Assessments

\* \* \*

(b) **Assessment.**—Upon receipt from the court of an order for an assessment, a member of the board...shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator.... An assessment shall include, but not be

limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(viii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.

* * *

42 Pa.C.S.A. § 9795.4(b).

The salient inquiry, mandated by the statute, therefore, in determining SVP status is identification of the impetus behind the commission of the offense; that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question determines, at least theoretically, the extent to which the offender is likely to reoffend, and section 9795.4 provides the criteria by which such likelihood may be gauged.

*Commonwealth v. Bey*, 841 A.2d 562, 566 (Pa.Super.2004).

¶ 15 In *Krouse, supra*, the Commonwealth's expert concluded the defendant had a personality disorder with antisocial features and was likely to engage in sexually violent offenses in the future. *Id.* at 840. The expert based his assessment on published studies which reported that persons who had similar physiological responses (erections to males) and engaged in similar conduct to that of the defendant (oral sex with a ten year old boy) were likely to repeat their behaviors. *Id.* at 841. The trial court concluded the defendant was a SVP. On appeal, this Court determined the expert's diagnosis was flawed, because the expert had assumed the existence of facts not in evidence. *Id.* The expert's diagnosis was also called into question, "considering the diagnostic tests performed by the defense expert during interviews with Krouse, which do not indicate personality disorders." *Id.* Moreover, the *Krouse* court stated that even if it deemed all of the expert's testimony as properly supported and true, the Commonwealth's proof was nonetheless insufficient, because numerous statutory factors weighed against a SVP classification. *Id.* at 841–42. For example, the offense did not involve multiple victims, it did not in-

volve force or cruelty, it was the defendant's first sexual offense, and there was no evidence in the record of prior mental health problems or deviant sexual behavior. *Id.* at 842.

¶ 16 Instantly, Mr. Loop testified the impetus behind Appellant's offenses was the mental abnormality of "hebephilia" or persistent arousal to adolescent children.[9] Mr. Loop's own testimony, however, calls into question the identification of "hebephilia" as the primary impetus for Appellant's behavior. Mr. Loop repeatedly testified the relationship between Appellant and his stepdaughter turned sexual **only** after Appellant's relationship with his wife deteriorated. For example, Mr. Loop stated Appellant's relationship with the victim "seems to have changed surrounding a shift in the marital relationship where there was an absence of sexual intimacy between [Appellant] and his wife, and he began to turn to this young lady for the purposes of sexual interaction[.]" (N.T. SVP/Sentencing at 8). Similarly, Mr. Loop testified regarding Appellant's "statements about his no longer being sexually active with his spouse and viewing this 14 year old as a sexual outlet." (*Id.* at 9). Evidence that Appellant sought a sexual surrogate reasonably suggests his offenses against his stepdaughter were perhaps due to situational motivating factors. *See Bey, supra. See also Meals, supra* (holding evidence insufficient to support SVP classification where diagnosis of pedophilia was based entirely on age of victims).

¶ 17 Further, Mr. Loop testified the offenses did not involve multiple victims, unnecessary means, threats, or unusual cruelty. He also testified this was Appellant's first sexual offense and that Appellant had no history of failed treatment. Significantly, Mr. Loop testified Appellant's age suggests a decreased likelihood to reoffend. Thus, even if we took Mr. Loop's opinion testimony regarding Appellant's mental abnormality and predatory conduct as true, numerous statutory factors necessary to support a SVP classification are absent; significantly absent is a showing of the likelihood of reoffense. *See Krouse, supra.* Thus, we are constrained to conclude the evidence was insufficient to support the classification of Appellant as a SVP. *See Krouse, supra; Meals, supra; Bey, supra. See also Commonwealth v. Lipphardt*, 841 A.2d 551 (Pa.Super.2004) (holding evidence insufficient to support SVP classification, where numerous statutory factors were absent).

¶ 18 Based on the foregoing, we hold the evidence was insufficient to support Appellant's SVP classification. Accordingly we reverse and vacate the judgment of sentence as to Appellant's SVP classification only, and affirm the judgment of sentence in all other respects. We remand the matter to the trial court to inform Appellant of his new registration requirements.[10]

¶ 19 Judgment of sentence reversed and vacated with regard to Appellant's SVP classification; judgment of sentence af-

---

**9.** The court recognized, "[Mr. Loop] concedes that that is not—that term is not defined within the DSM–IV category listing, but he has described it as an intense and continuing sexual arousal to young or adolescent children[.]" (N.T. SVP/Sentencing at 44).

**10.** Our decision only removes the lifetime registration requirements under Megan's Law II for sexually violent predators. *See* 42 Pa.

C.S.A. § 9795.1(b)(3). We emphasize that Appellant is still required to register as an offender convicted of a predicate offense under Megan's Law II for at least ten years. *Commonwealth v. Williams*, 574 Pa. 487, 497–98, 832 A.2d 962, 967–68 (2003); 42 Pa. C.S.A. § 9795.1. We direct the trial court to make that determination and correspondingly inform Appellant.

firmed in all other respects. Case remanded to the trial court to determine Appellant's new registration requirements. Jurisdiction is relinquished.