# Commonwealth v. Mullins

*Robin M. Campbell, assistant district attorney,* for appellee Commonwealth.

*Christa S. Dunleavy, senior deputy public defender,* for appellant.

GOLDBERG, *J.,* October 6, 2005—On November 12, 2003, Thomas Mullins (appellant) pled guilty to various crimes stemming from his ongoing molestation of his stepdaughter, who at the time of the plea hearing was 12 years old.

On appeal, appellant raises several issues pertaining to his designation as a sexually violent predator pursuant to 42 Pa.C.S. §§9791-9799.7, commonly referred to as Megan's Law. He also challenges the constitutionality of that statute. As appellant's constitutional challenge to Megan's Law has been addressed by a three-judge panel of this court, we rely upon and attach that opinion. [not published herein]

We address appellant's remaining issues below and file this opinion pursuant to Pa.R.A.P. §1925(a).

## PROCEDURAL AND FACTUAL BACKGROUND

On August 12, 2003, appellant was charged with involuntary deviate sexual intercourse, aggravated sexual

assault, indecent assault, endangering the welfare of children, and corruption of the morals of a minor. He originally entered a plea of not guilty.

On November 10 and 12, 2003, hearings were held on appellant's pretrial motions which included his request that the incriminating statements he provided to a Bucks County Children and Youth investigator be suppressed.[1]

After these motions were disposed of, appellant waived his right to a jury trial and a bench trial commenced. The Commonwealth's first witness was the victim, a visibly shaken and distraught 12-year-old. She explained that appellant had moved in with her and her two siblings after her mother and appellant met in Florida. When her mother and appellant married, they all moved to Bucks County where they lived together for two years. Although the victim provided this background information, at least initially, she was reluctant to testify further. Indeed, she stated that she would refuse to testify against her father and that in any event, she did not recall what had happened. (N.T. 11/12/03, pp. 79-84, 89-96.)

As the assistant district attorney attempted to question the victim about the information she had provided a Children and Youth investigator, the victim became more distraught and ultimately requested to speak with her court-appointed attorney. After a brief recess, the victim testified that appellant had "touched her in inappropri-

_____

1. During the hearing on this issue, the Children and Youth investigator testified that on June 4, 2003, after receiving information from the victim that appellant had molested her, she traveled to appellant's home where appellant almost immediately admitted that he had fondled and engaged in oral sex with the victim. (N.T. 11/10/03, pp. 16-17.)

ate places." Only after this occurred did appellant announce his intention to change his plea to guilty. (N.T. 11/12/03, pp. 98-102.)

The facts adduced at the guilty plea hearing were as follows:

• From the spring of 2002, appellant sexually assaulted the victim approximately 20 times;

• These assaults included forcing the victim to perform oral sex on appellant where both appellant and the victim would have their clothes off. At the conclusion of these acts, appellant would ejaculate into a towel;

• Prior to that time, and while her family lived in Florida, appellant first assaulted the victim when she was between the first and second grade;

• On at least one occasion appellant rubbed and attempted to place his finger into the victim's vagina;

• On other occasions appellant forced the victim to view pornographic movies with him while he masturbated;

• Appellant would typically molest the victim when her mother was out of the house on business;

• Prior to assaulting the victim, appellant would advise her that he "had plans" for them, indicating that sexual contact would occur;

• In attempting to explain the sexual contact between them, appellant told the victim "every dad and daughter do it . . . it makes us seem like more of a family"; and

• In the most recent assault, sometime in early June of 2003, appellant asked the victim to perform oral sex on him. When she refused, he became angry and told her

that she "shouldn't lead people on and play with their heads when you are in a relationship." (N.T. 11/12/03, pp. 115-20.)

After the above referenced facts were read into the record, appellant was specifically asked whether such facts were accurate and whether he was guilty of committing such acts. Appellant answered both questions affirmatively. (N.T. 11/12/03, pp. 121-22.)

On May 7, 2004, we held a hearing on the Commonwealth's motion requesting that appellant be classified as a sexually violent predator (SVP). In support of this request, the Commonwealth called Dr. John M. Shanken-Kaye, a psychologist specializing in the assessment and treatment of adult sex offenders and in the diagnosis of general psychopathology and personality disorders.[2] Shanken-Kaye opined that appellant did meet the criteria to be classified as an SVP. (N.T. 5/07/04, pp. 32, 54.)[3]

In reaching this opinion, Dr. Shanken-Kaye first concluded that appellant suffered from the mental abnormality of pedophilia. This diagnosis is warranted when a person exhibits a deviate sexual arousal to young children and either acts on those urges or where those urges

---

2. Dr. Shanken-Kaye's experience and background includes: a doctorate in psychology; an extensive internship at a treatment center for juvenile sex offenders; hundreds of continuing education hours in the area of assessment and treatment of adult sex offenders; and serving as an instructor for the Pennsylvania Sexual Offenders Assessment Board, of which he is a member. (N.T. 5/7/04, pp. 16-19.)

3. Since being appointed to the Sexual Offenders Assessment Board, Dr. Shanken-Kaye has completed 32 Megan's Law assessments. In only six of those 32 assessments has Shanken-Kaye opined that an SVP classification was warranted. (N.T. 5/07/04, p. 19.)

cause difficulty in interpersonal relationships. Shanken-Kaye explained that this diagnosis was supported by appellant's prolonged sexual relationship with his step-daughter, who was under 13 years old. Shanken-Kaye noted that appellant's conduct and classification as a pedophile also satisfied the criteria set forth in the Diagnostic & Statistical Manual of the American Psychiatric Association for Pedophilia. (N.T. 5/07/04, pp. 32-36.)

Dr. Shanken-Kaye also concluded that the relationship between appellant and the victim was predatory as defined under Megan's Law. Shanken-Kaye reached this conclusion based on the fact that appellant's acts were directed at a person (here, his stepdaughter) with whom a relationship was established or promoted for the primary purpose of victimization. Appellant's predatory conduct was supported by several factors, including:

• The abuse took place when the victim's mother would travel, leaving the victim in appellant's care;

• The molestation of the victim started at a very young age and continued for numerous years;

• Prior to molesting the victim, appellant would announce his intention to do so, telling her he had plans for them that evening. Appellant also furthered the predatory relationship through preferential treatment of the victim; and

• In the last incident wherein appellant attempted to assault the victim and she resisted, the victim was concerned that appellant would be angry and she was afraid of his anger. (N.T. 5/07/04, pp. 37-47.)

In his report, which was received into evidence, (exhibit C-2), Shanken-Kaye also reviewed the assessment factors set out in section 9795.4(b) and opined that, in addition to appellant's mental abnormality and predatory conduct, several of these factors weighed in favor of designating appellant as an SVP. Specifically, Shanken-Kaye considered the young age of the victim (section 9795.4(b)(1)(v)); the lack of participation by appellant in offender specific therapy (section 9795.4(b)(2)(iii)); the fact that appellant has a significant mental abnormality as evidenced by his "repeatedly orally raping and otherwise sexually molesting his very young stepdaughter over a period of at least five years" (section 9795.4(b)(3)(iii)); and the nature of the sexual contact with the victim which in this case was predatory, ongoing, and manipulative (section 9795.4(b)(1)(iii)).

Appellant did not offer any evidence to refute Dr. Shanken-Kaye's determination that he was an SVP. Rather, he presented the testimony of Dr. Allan M. Tepper, who opined that Dr. Shanken-Kaye had reviewed insufficient information to form an opinion that appellant was an SVP. (N.T. 5/07/04, pp. 181-82.)

At the conclusion of the Megan's Law hearing, we found that the Commonwealth had met its burden by clear and convincing evidence that appellant be classified an SVP. Appellant was subsequently sentenced to six to 12 years incarceration.

On May 20, 2004, appellant filed post sentence motions challenging the constitutionality of Megan's Law II. A hearing was held on this issue on September 23, 2004, and continued to November 4, 2004. At the conclusion of this hearing, a three-judge panel of this court

considered the entire record in this case and rejected appellant's constitutional challenge to Megan's Law in an opinion issued February 14, 2005 (attached). [not published herein]

On April 7, 2005, appellant filed a timely concise statement of matters complained of on appeal. On April 15, 2005, after we ordered a more specific section 1925 statement, appellant filed a supplemental concise statement of matters complained of on appeal. We summarize the issues raised on appeal by appellant as follows:

• In designating appellant an SVP, did the court improperly rely on evidence not of record and outside of the time period charged in the criminal information, that is, that the assaults on the victim began when she was 7 years of age? (Concise statement, ¶1. a.; supplemental concise statement, ¶3. a.-f.);

• Did the Commonwealth establish, by clear and convincing evidence, that appellant's actions were predatory? (Concise statement, ¶1. b.);

• Did the Commonwealth establish by clear and convincing evidence that appellant suffers from a mental abnormality—pedophilia? (Concise statement, ¶1. c.; supplemental concise statement, ¶3. i.-j.);

• Did the trial court fail to consider certain statutory factors under Megan's Law? (Concise statement, ¶1. d.); and

• In designating appellant as an SVP, did the trial court improperly consider the fact that appellant's acts involved significant planning and premeditation? (Supplemental concise statement, ¶3. g.-h.)

## DISCUSSION

Appellant first alleges that in classifying him as an SVP, we relied upon evidence which was not of record. Specifically, appellant claims that we erred in relying on the fact that the sexual abuse started when the victim was approximately 7 years of age. (Concise statement, ¶1. a.; supplemental concise statement, ¶3. a.-f.) This claim is directly refuted by the record.

As set forth above, at the guilty plea hearing the prosecutor proffered certain facts in support of the charges as follows:

"Miss Gardner [the Children and Youth investigator] interviewed [the victim] in this case, the 11-year-old female, who currently lived with her mother, sister, brother and the defendant. . . . She stated that from the spring of 2002, initially, until the present, the defendant had sexually assaulted her at that address approximately 20 times, during that last year. . . . She stated that prior to moving to Bucks County, she lived in Tampa, Florida, and that *the defendant had first sexually assaulted her when she was between first and second grade* in Tampa, Florida." (N.T. 11/12/03, pp. 116-17.) (emphasis added) At the conclusion of the recitation of the facts, we asked appellant, who was under oath, if he agreed with their accuracy and he clearly answered affirmatively. (N.T. 11/12/03, pp. 121-22.)

On the day of the plea hearing the victim was 12 years old and in seventh grade. (N.T. 11/12/03, p. 89.) As set forth above, at the plea hearing, appellant acknowledged and agreed that he first assaulted the victim when she was in between first and second grade, approximately

five years prior to the plea hearing. Thus, the victim would have been approximately 7 years of age when the assaults first occurred. Additionally, Dr. Shanken-Kaye's report was also made part of the Megan's Law hearing record, by agreement of appellant's counsel. (N.T. 5/07/04, pp. 30-31.) This report also reiterates that appellant "sexually assaulted her in Florida, beginning in the first or second grade." (Exhibit C-2.) Thus, there was ample evidence in the record to support the fact that the assaults began when the victim was 7 years of age.

While we recognize that there are other statements in the record which may reflect that the victim was slightly older, this discrepancy would hardly change the fact that appellant systematically and repeatedly molested the victim when she was very young—whatever her precise age. Nonetheless, because there is direct support in the record that the assaults began when the victim was 7 years of age, no error occurred.

In a related issue, appellant also alleges error in our considering instances of abuse that took place before the dates charged in the criminal information to which he "did not plead guilty." (Supplemental concise statement, ¶3. e.-f.) This claim is also meritless.

We first reiterate that appellant acknowledged, under oath at the plea hearing, that the molestation began when the victim was 7 years old. Thus, this is not the case where unproven allegations were relied upon by the Commonwealth's expert and/or the court in determining that appellant should be classified as an SVP. Rather, both Dr. Shanken-Kaye and this court properly relied upon occurrences which appellant admitted to under oath.

Nor is appellant's claim analogous to a sentencing court improperly considering uncharged conduct. In those cases, where the sentencing court relies on "impermissible considerations," such reliance is improper if the information is "unreliable." See *e.g., Commonwealth v. Karash,* 306 Pa. Super. 229, 452 A.2d 528 (1982); see also, *Commonwealth v. Vernille,* 275 Pa. Super. 263, 275, 418 A.2d 713, 719 (1980) (not improper for sentencing court to consider involvement in other unlawful activity where defendant admitted to most of the facts). Here, in classifying appellant as an SVP, our partial reliance on facts outside of the dates in the charging document was perfectly proper as appellant admitted to those acts, and such evidence was, therefore, of record and entirely reliable.

Lastly, we note that the assessment section of Megan's Law requires that we consider the facts of the offense, the nature of the sexual contact with the victim, and the age of the victim. (Section 9795.4(b)(1).) Thus, our consideration of the duration of the assaults was mandated by statute.

Appellant next alleges that the Commonwealth failed to prove by clear and convincing evidence that appellant meets the definition of predatory. (Concise statement, ¶1. b.)

Pursuant to section 9792, predatory is defined as "an act directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." Here, Dr. Shanken-Kaye properly considered numerous factors which reflect that appellant promoted his relationship with his

stepdaughter for the primary purpose of victimization. These include appellant's long-term pattern of abuse initiated when the victim was very young, his preferential treatment of the victim, his planning of the sexual abuse when the victim's mother was away on business and manipulation of the young victim. (N.T. 5/07/04, pp. 37-41.) These facts are more than sufficient evidence to support Dr. Shanken-Kaye's opinion that appellant's conduct was predatory.

Appellant next alleges that the Commonwealth failed to establish, by clear and convincing evidence that appellant suffers from the mental abnormality of pedophilia. (Concise statement, ¶1. c.; supplemental concise statement, ¶3. i.-j.) As set forth above, pedophilia is defined as a deviate sexual arousal to young children where that arousal is acted upon. Here, appellant molested his young stepdaughter starting when she was approximately 7 years old. This abuse continued for at least five years. This is overwhelming evidence that appellant has a significant mental abnormality—pedophilia. For these reasons, this claim is also meritless.

Appellant next alleges that we failed to consider certain statutory factors under Megan's Law. (Concise statement, ¶1. d.) This claim is also refuted by the record. In finding that the Commonwealth had proven, by clear and convincing evidence, that appellant should be classified as an SVP, we stated:

"The court credits the testimony of Dr. Shanken-Kaye. We find him to be extremely credible. We find his qualifications to be very impressive. I'll come back to Dr. Tepper in a moment. But it seems abundantly clear to

this court that when it comes to Dr. Shanken-Kaye's qualifications in this specific area, that is, in the assessment of whether someone is a sexually violent predator, his experience is more focused, more precise on the issue that is before this court than Dr. Tepper's, who doesn't seem to have as much specific experience on the issue that's before this court.

"This court credits and agrees with the factors as articulated by Dr. Shanken-Kaye. Have all of the factors been met under the assessment listings under 9795.4? No. Do all of the factors have to be met? No. And I think the defense would even agree with that.

"It seems to this court that what this court is to look at is not only have some of the factors been met, but the strength of the Commonwealth's evidence on those factors that have been met. And the first factor that this court finds has been met by substantial evidence, by overwhelming evidence, is that this defendant has an extreme and significant mental abnormality, that is, pedophilia.

"To recite the facts in this case, which involved an extremely young girl, a child, wherein she was induced to perform oral sex on him. He acknowledged at a later point he performed oral sex on her. She was forced to perform manual stimulation on his penis with her hand. In some of these acts she was made to undress. On one occasion this defendant rubbed her vagina and tried to place his finger in her vagina. And on other occasions while this was occurring he made this child, and the record will bear out the exact date, but this court remembers that these offenses started when this child was 7 years old, a startlingly young age.

"Given those facts, in and of itself, it is abundantly clear to this court that Mr. Mullins suffers from extreme mental abnormality. That, coupled with the length of time that this abuse went on and the amount of times that it went on, this court finds that the Commonwealth has presented significant evidence regarding the mental abnormality of this defendant.

"The court finds and also credits Dr. Shanken-Kaye's testimony regarding the fact that the Commonwealth has met its burden as it relates to the factor pertaining to the nature of the relationship in this case between the defendant and his victim, which the court also finds is a very significant factor in reaching its conclusion. This relationship, as I stated, started when this child was 7 years old and continued up until the time that she was 12. That's almost half of her life. There was manipulation present, as there would have to be.

"The court finds that there was preferential treatment which was offered by this defendant to this victim in order to continue to induce this twisted relationship. There was significant time and planning and premeditation involved in order to continue this relationship." (N.T. 5/07/04, pp. 217-19.)

The above statement, which summarizes the basis for our designation of appellant as an SVP, clearly refers to several statutory factors, including: section 9795.4(b)(1)(iii)—The nature of the sexual contact with the victim; section 9795.4(b)(1)(iv)—Relationship of the individual to the victim; section 9795.4(b)(1)(v)—Age of the victim; and section 9795.4(b)(3)(iii)—Charac-

teristics of the individual including mental abnormality.

Additionally, our acknowledgement that not all of the assessment factors under section 9795.4 were met clearly reflects that each was considered. Moreover, precedent on Megan's Law does not require that all of the assessment factors be met in order to classify a defendant as an SVP. See *e.g., Commonwealth v. Snyder,* 870 A.2d 336 (Pa. Super. 2005); *Commonwealth v. Moody,* 843 A.2d 402 (Pa. Super. 2004). The assessment factors set forth under section 9795.4 are not weighted equally. The mental abnormality factor (section 9795.4(b)(3)(iii)) should be weighed more heavily than other factors. *Commonwealth v. Bey,* 841 A.2d 562, 566 (Pa. Super. 2004). As we clearly noted numerous assessment factors, including appellant's mental abnormality of pedophilia, this claim also lacks merit.

Lastly, appellant claims that we erred in considering that his acts involved planning and premeditation. The statute, by its very terms, mandates that we consider this issue. Section 9795.4(b)(1) instructs that the facts of the offense be examined. The unrefuted record establishes that appellant would advise the victim, in advance, when her mother was out of town that he "had plans" for them in the evening. These assaults occurred over a period of at least five years. Dr. Shanken-Kaye properly considered this evidence in opining that this reflected predatory behavior as it was indicative of appellant's promoting a relationship for victimization. (N.T. 5/07/04, pp. 39-40.) As such, we properly considered this evidence.

144

## CONCLUSION

For the foregoing reasons, the orders designating appellant an SVP and rejecting his constitutional challenge to Megan's Law should be affirmed.