J-S31028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                      :              PENNSYLVANIA
                                        :
             v.                            :
                                        :
                                        :
JOSEPH EXUME                          :
                                        :
             Appellant             :      No. 2477 EDA 2022

Appeal from the judgment of sentence entered December 9, 2021
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0004078-2021

BEFORE: OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:             **FILED MARCH 25, 2024**

Appellant, Joseph Exume, appeals from the judgment of sentence entered on December 9, 2021, imposing an aggregate 10 to 20 years of incarceration followed by 10 years of probation for rape by forcible compulsion, involuntary deviate sexual intercourse, and unlawful contact with a minor.[1] The judgment of sentence was rendered final by the trial court's order of September 26, 2022 designating Appellant to be a sexually violent predator ("SVP").[2] We affirm.

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3123, and 6138.

[2] Where, as here, the SVP hearing is deferred until after the imposition of the term of incarceration and/or probation, the subsequent SVP order renders the judgment of sentence final and appealable. ***Commonwealth v. Hollingshead***, 111 A.3d 186, 188 (Pa. Super. 2015), ***appeal denied***, 125 A.3d 1199 (Pa. 2015).

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a)

opinion:

> While a brief factual synopsis cannot sufficiently convey the horrific abuse Appellant inflicted upon Victim for eight years, this court will nonetheless attempt to provide one. Victim and Appellant are originally from Haiti. In December of 2013, after the death of Victim's mother, Appellant invited then 16-year-old Victim to leave Haiti and live with him in Morrisville, Bucks County, Pennsylvania so she could pursue her studies. At that time Victim believed that Appellant was her biological father, but this belief was later disproven in the course of law enforcement's investigation. Appellant offered to provide for her financially so she could attend nursing school and send money back to her family in Haiti. Both promises set up a dynamic wherein Victim relied on Appellant for both her and her family's survival. Appellant, 43 years old at the time, began sexually abusing 16-year-old Victim within weeks of her arrival to the United States. The first incident occurred while she was home taking a shower. Appellant came into the shower with her and began to shave her pubic hair. When he was done, Appellant brought her into his bedroom and laid her on the bed. Appellant then penetrated her vaginally with his fingers and asked her if anyone had ever touched her like that before. Victim asked Appellant to stop, and he complied, but only for that night.
>
> Appellant's sexual abuse continued for the next eight years. Appellant penetrated Victim digitally, orally, and vaginally and told her she had to smile. If Appellant did not believe that she enjoyed the sexual assault, he would repeatedly rape her and tell her it was her fault. In the instances where Victim tried to evade his assaults, Appellant held her down by the neck. Appellant humiliated Victim by placing objects, such as a beer bottle, into her vagina. When Victim tried to run away, Appellant caught her and physically beat her to the point that she was unable to attend school the following day. In addition to the physical and sexual abuse, Appellant also financially abused the Victim by frequently reminding her that he provided for her and her family and that he would cease providing his financial support should she attempt to leave. On a few occasions, Victim's period was late, and she feared she may be pregnant. Because she believed that Appellant was her biological father, the possibility of carrying his child was especially traumatizing. During one of the sexual assaults,

however, Appellant informed Victim that he was not actually her biological father, so it was "ok".

      The final incident occurred on May 25, 2021. Victim was at home, located at 442 Prospect Avenue, Morrisville Borough, Bucks County, Pennsylvania. When Appellant returned from work at approximately 11:00 p.m., Appellant sat in the den and called Victim over to him. Appellant kissed her and told her to remove her underwear. Appellant touched her and she asked him to stop. Appellant refused and told her that if she did not allow him to touch her then he would use force instead. Victim and Appellant then struggled on the floor, and Victim was able to escape. She wandered around Morrisville Borough all night until the Morrisville Police Station opened in the morning. As soon as the station opened, Victim, now 24 years old, filed a report and gave her statement to law enforcement.

PCRA Court Opinion, 5/22/23, at 1-3.

Appellant pled guilty to the aforementioned offenses on December 9, 2021, and the trial court imposed sentence on that date. By agreement of the parties, the SVP hearing was deferred until a later date. At the conclusion of a September 26, 2022 hearing, the trial court concluded that Appellant was an SVP. In this timely appeal, Appellant argues the trial court erred in designating him an SVP because the Commonwealth failed to produce sufficient evidence that Appellant suffers from a mental abnormality that renders him likely to reoffend. Appellant's Brief at 8.

When assessing the sufficiency of the evidence in support of the trial court's SVP determination, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006). We consider the evidence in the light most favorable to the Commonwealth, because the Commonwealth prevailed on this issue before the trial court. ***Id.***

Likewise, we do not reweigh the evidence presented to the sentencing court, nor do we make credibility determinations. *Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa. Super. 2008), *appeal denied*, 963 A.2d 467 (Pa. 2008). We reverse the trial court's SVP determination only if the Commonwealth failed to produce clear and convincing evidence in support of each element required by the SVP statute. *Id.* Clear and convincing evidence is an intermediate standard of proof, "falling below the highest level of proof, beyond a reasonable doubt, but above the preponderance of the evidence standard." *Commonwealth v. Stephens*, 74 A.3d 1034, 1039 (Pa. Super. 2013).

A sexually violent predator assessment proceeds under 42 Pa.C.S.A. § 9799.24(b):

> **(b) Assessment.--**Upon receipt from the court of an order for an assessment, a member of the board as designated by the executive director of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:
>
> > (1) Facts of the current offense, including:
> >
> > > (i) Whether the offense involved multiple victims.
> > >
> > > (ii) Whether the individual exceeded the means necessary to achieve the offense.
> > >
> > > (iii) The nature of the sexual contact with the victim.
> > >
> > > (iv) Relationship of the individual to the victim.
> > >
> > > (v) Age of the victim.

- 4 -

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa. C.S.A. § 9799.24(b). These factors are not a checklist, and there is no requirement that any specific number of them applies before the trial court can issue an SVP designation. *Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa. Super. 2010), *appeal denied*, 21 A.3d 1189 (Pa. 2011).

The statute defines an SVP as a person determined to be an SVP under § 9799.24 "due to a mental abnormality or personality disorder that makes a person likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. A mental abnormality is a "congenital or acquired condition of a

person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* A predatory act is "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.* In summary, then, the "'salient inquiry' for the trial court is the 'identification of the impetus behind the commission of the crime,' coupled with the 'extent to which the offender is likely to reoffend.'" *Commonwealth v. Dixon*, 907 A.2d 533, 536 (Pa. Super. 2006) (**quoting *Commonwealth v. Bey***, 841 A.2d 562, 566 (Pa. Super. 2004), *appeal denied*, 920 A.2d 830 (Pa. 2007). This Court has rejected the argument that the presence of only a few of the statutory factors evidences a lower likelihood of re-offense. *Commonwealth v. Morgan*, 16 A.3d 1165, 1173 (Pa. Super. 2011), *appeal denied*, 38 A.3d 824 (Pa. 2012).

The Commonwealth's expert, Dr. Robert M. Stein, assessed all the statutory factors in his testimony. N.T. Hearing, 9/26/22, at 24-29. Appellant declined to be interviewed by Dr. Stein. *Id.* at 22. In this case, there was one victim, and Appellant on one occasion exceeded the means necessary for the commission of the offense by physically beating the victim to maintain her submission to his assault. *Id.* at 26. The nature of the sexual conduct "involved force, penetrative acts, including penis-vagina rape, oral sex, and

digital penetration." *Id.* The victim was Appellant's stepdaughter, but he originally led her to believe she was his daughter. *Id.* As the trial court noted, this fact, in addition to all the other abuse Appellant inflicted, was traumatic for the victim, especially when she believed she was pregnant by her own father. Other unusual cruelty included the use of objects, such as a beer bottle, to penetrate the victim. *Id.* In addition, Appellant physically beat the victim after she ran away to escape abuse. *Id.* at 30. He became angry when the victim cried during assaults and forced her to thank him for touching her. *Id.* Also, he told her that he would stop providing for her family in Haiti if she told anyone of his assaults. *Id.* Other statutory factors that sometimes weigh in favor of an SVP designation were absent—the victim was of normal mental capacity, Appellant had no criminal history, and there was no evidence that illegal drugs were involved. *Id.* at 28-29.

Dr. Stein diagnosed Appellant with paraphilic disorder, which he described as a "disorder of any type of sexually deviant acts that victimize another individual." *Id.* at 31. The duration of Appellant's abuse of the victim—for eight years, while the victim was aged 16 to 24—contributed heavily to Dr. Stein's diagnosis. *Id.* at 29. Likewise, the duration of Appellant's abuse of the victim led Dr. Stein to conclude that Appellant was likely to reoffend. *Id.* at 32. Further, Appellant's conduct was predatory because he maintained the victim's compliance by beatings, the threat of beatings, and the treat of cutting off financial support to her family in Haiti.

*Id.* at 33. And it is not normal to have sexual thoughts and act on them with a young woman who was actually Appellant's stepdaughter, and who was initially told she was Appellant's daughter. *Id.* at 45-46. Based on all of the foregoing, Dr. Stein opined that Appellant met the criteria to be designated an SVP. *Id.*

Appellant argues that Dr. Stein's testimony was insufficient because he failed to identify the driving force behind Appellant's conduct. At the hearing, Appellant relied on the victim's statement that Appellant had been in love with the victim's mother and told the victim she looked like her mother. *Id.* at 41-43. For that reason, Appellant argued at the hearing that his risk of reoffending was low. *Id.* at 50. That is, Appellant would have us conclude that his love for the victim's mother, rather than his paraphilia diagnosis, explains the impetus for his crime. He presses that argument again on appeal. But the argument is no more than an invitation to this Court to reweigh the evidence the parties presented to the trial court. The trial court was aware of the victim's statement about Appellant's love for her mother, and the court was aware that Appellant would be 62 years old upon the expiration of his ten-year minimum term, and that the risk of recidivism generally goes down after age 60. *Id.* at 47-48. But the trial court also heard Dr. Stein's testimony about Appellant's paraphilia diagnosis and the likelihood of re-offense based on Appellant's paraphilia and the prolonged period of horrific abuse of the victim. The court weighed the evidence and concluded Appellant's mental

abnormality, considered in light of the circumstances of the offenses to which he pled guilty, rendered him likely to reoffend. We are not permitted to reweigh the evidence that led to that conclusion. *Feucht*, 955 A.2d at 382. Furthermore, this Court previously has held that the duration of time over which the defendant sexually abuses the victim supports a conclusion that the defendant is likely to reoffend. *Commonwealth v. Geiter*, 929 A.2d 648, 652-53 (Pa. Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2007).

Appellant also argues that the trial court's SVP designation was erroneous because many of the statutory factors are absent here. This argument fails because, as explained above, the SVP designation does not depend on the number of statutory factors present. *Brooks*, 7 A.3d at 863. And for the reasons explained above, the evidence pertaining to the statutory factors that are present in this case is more than sufficient to support a finding, by clear and convincing evidence, that Appellant engaged in predatory behavior and suffers from a mental abnormality that renders him likely to reoffend. We discern no error in the trial court's SVP designation.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  3/25/2024