J. S55027/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| NELSON MARTINEZ | : | |
| Appellant | : | |
| | : | No. 1337 EDA 2015 |

Appeal from the Judgment of Sentence Entered April 8, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0002416-2013

BEFORE: LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED NOVEMBER 10, 2016**

Appellant seeks review of the Judgment of Sentence entered by the

Court of Common Pleas of Lehigh County after a jury convicted him of Rape

of a Child and related offenses.  He challenges the discretionary aspect of his

sentence, the sufficiency of the evidence supporting his designation as a

sexually violent predator, and certain evidentiary rulings.  The Hon. Kelly L.

Banach has provided a thorough, well-reasoned Pa.R.A.P. 1925(a) Opinion

that properly addresses the issues presented.  We adopt that Opinion as our

own, and affirm the Judgment of Sentence.

The trial court has set forth the facts in detail and we need not fully

restate them here.  ***See*** Trial Court Opinion, dated October 20, 2015, at 2-8.

---

[*] Former Justice specially assigned to the Superior Court.

In sum, in the fall of 2012, on at least four occasions, Appellant sexually abused his 11-year-old step-daughter. Appellant, who was married but estranged from the victim's mother at the time of the abuse, had known the victim since she was four or five years old. The victim referred to Appellant as "Daddy."

After a three-day trial at which both the victim and Appellant testified, the jury found Appellant guilty of one count each of Rape of a Child, Involuntary Deviate Sexual Intercourse with a Child ("IDSI"), Aggravated Indecent Assault of a Child, Sexual Assault, Corruption of Minors, and Indecent Assault of a Child.[1] Appellant underwent a Sexual Offender Assessment Board Evaluation ("SOAB"), and obtained his own independent pre-sentence psychological evaluation. The court requested a pre-sentence investigation ("PSI").

At sentencing, Appellant did not present the results of his independent psychological evaluation. The court stated on the record that it had reviewed, *inter alia*, the PSI report, which included numerous prior drug offenses, the sentencing guidelines, victim impact statements from the victim and her mother, the SOAB assessment, and a copy of a memo from the jail that indicated that Appellant had not misbehaved or participated in

---

[1] 18 Pa.C.S. § 3121(c); 18 Pa.C.S. 3123(b); 18 Pa.C.S. § 3125(b);18 Pa.C.S. § 3124.1; 18 Pa.C.S. § 6301(a)(1)(ii); and 18 Pa.C.S. § 3126(a)(7), respectively.

any programs, activities or employment. **See** N.T. Sentencing, 4/8/15, at 5. The court found Appellant to be a sexually violent predator and sentenced him to consecutive statutory maximum sentences, for an aggregate term of incarceration of 43½ years to 87 years.[2] **See** N.T. Sentencing, 4/8/15, at 52-61.

After the denial of his Post-sentence Motion, Appellant timely appealed to this Court. Appellant and the trial court complied with Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

1. Whether the aggregate sentence of forty-three and one-half (43.5) to eighty[-]seven (87) years was excessive, unreasonable[,] and unduly harsh, and was an abuse of discretion?

2. Whether the trial court erred in prohibiting the testimony of juvenile witnesses, Noah and Moses Martinez, who would have offered potentially exculpatory material evidence in contradiction of the victim's testimony, which prohibition was highly prejudicial to the Defendant?

3. Whether the trial court erred in denying the Defendant's motion *in limine* to exclude testimony of Deputy Sheriff, James E. Bonner, pursuant to Pennsylvania Rules of Evidence 401 and 403, as such testimony was irrelevant, speculative, conjectural, unsupported by scientific or expert opinion and was far more prejudicial to Defendant that it was probative?

---

[2] Specifically, the court sentenced Appellant to the following terms of incarceration: 20 to 40 years' incarceration on the rape conviction (count 1); a consecutive term of 20 to 40 years on the IDSI conviction (count 2); two concurrent 5 to 10 year terms for the aggravated indecent assault and sexual assault convictions (to be served concurrently with counts 1 and 2); 3½ to 7 years for the corruption of minors conviction (consecutive to counts 1 and 2); and 2½ to 5 years for indecent assault of a child (concurrent with corruption of minors sentences).

4. Whether the trial court erred in ruling that the Defendant was a sexually violent predator?

Appellant's Brief at 3.

In his first issue, Appellant argues that the sentencing court's imposition of "consecutive statutory maximum sentences of twenty to forty years … is excessive and indicative of the Court's ill-will against the Defendant[.]" *Id*. at 16. He contends that "the court failed to explicitly state adequate reasons on the record or directly address the enumerated sentencing factors." *Id*. For the following reasons, we conclude there is no merit to this sentencing challenge.

The individual sentences imposed on Appellant are within the permissible statutory maximums and, therefore, clearly are legal sentences. Appellant's appeal asks us to review the discretionary aspects of his sentence. *See*, *e.g.*, *Commonwealth v. Gonzalez*, 994 A.2d 595, 597 (Pa. Super. 2010) (acknowledging that a claim that an aggregate sentence was excessive after court imposed consecutive sentences challenges the discretionary aspects of a sentence).

An appeal from the discretionary aspects of a sentence is not guaranteed as a matter of right. *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review by raising it at sentencing or in a timely post-sentence motion, the appellant must (1) "include in his brief a concise statement of the reasons relied upon for

allowance of appeal with respect to the discretionary aspects of a sentence[,]" pursuant to Pa.R.A.P. 2119(f); and (2) "show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *Commonwealth v. Hill*, 66 A.3d 359, 363-64 (Pa. Super. 2013).

In the instant case, Appellant filed a timely Notice of Appeal and a timely Post-Sentence Motion. He also included a Pa.R.A.P. 2119(f) Statement in his appellate brief. Although a court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question, where an appellant avers an excessive sentence due to the court's reliance on impermissible factors, the appellant has presented a substantial question for our review. *Commonwealth v. McNabb*, 819 A.2d 54, 56-57 (Pa. Super. 2003). *See*, *e.g.*, *Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa. Super. 2013) (holding that a defendant's challenge to the consecutive nature of his sentence raised a substantial question where the defendant articulated particular reasons why consecutive sentences were unreasonable); *Commonwealth v. Spencer*, 496 A.2d 1156, 1164 (Pa. Super. 1985) (vacating and remanding where sentencing judge in a robbery case showed bias in repeatedly referring to sixteen-year-old defendant as an "animal" and stating that it wished it could impose the death penalty because it "would gladly pull the switch on you, Chief.").

Having determined that Appellant's issue on appeal raises a substantial question for review, we turn to the merits of Appellant's sentencing challenge, mindful of our standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

"In reviewing a challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard." *Dodge*, 77 A.3d at 1274 (citation omitted). Additionally, "this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d)." *Id.* Section 9781(c) provides, in relevant part, that "[t]he appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds … (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable. In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." 42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

With respect to reviewing a sentence alleged to be "unreasonable," the Pennsylvania Supreme Court has recognized that

> Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed.1987); *see* 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition.

*Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa. 2007)

We are mindful that where, as here, the trial court has the benefit of a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (discussing *Commonwealth v. Devers*, 546 A.2d 12, 18-19 (Pa. 1988)). Thus, if the sentencing court states that it

considered the PSI, the court has properly explained the basis for the sentence that it imposed. **Ventura**, **supra** at 1135 (citation omitted).

Here, Appellant concludes that his sentence is "excessive and indicative of the Court's ill-will against [him]." Appellant's Brief at 16. In support, he quotes from the sentencing court's colloquy, throughout which Appellant repeatedly interrupted to state his innocence and to argue with the judge. In particular, Appellant emphasizes the judge's statements that (1) she was "offended … at the vile way in which you [Appellant] speak about [the victim's] mother, about the mother of your other children;" (2) "[y]ou are a vile, heinous, aggressive, dangerous man;" (3) "you are a scary scary, man. You have no regard for anyone other than yourself … [a]nd I would not want to meet you under other circumstances; and (4) "But you are really climbing to the top of my list of truly despicable human beings." Appellant's Brief at 10-14 (quoting N.T. Sentencing, 4/8/15, at 51-59).

Based on our review of the entire record, the briefs of the parties, the applicable law, and the comprehensive and well-reasoned opinion of the trial court, we conclude that there is no merit to Appellant's claim that his sentence was unreasonable or the result of the court's bias. Moreover, contrary to Appellant's contention, the court stated adequate reasons on the record for imposing the sentence it did after acknowledging that it had read the PSI report. While some of the court's language during sentencing may be perceived as harsh, it was not unduly so and did not manifest such "ill-

will" so as to render Appellant's consecutive sentences unreasonable. As the jury determined, Appellant sexually abused his step-daughter and one of her friends; with respect to his step-daughter, he raped her anally several times, fondled and licked her breasts and genitals, and forced her to give him oral sex under threat of her "getting in trouble," all while acting in the role of her father. *See* Trial Ct. Op., dated 10/20/15, at 9-13 (reviewing case law and the record before concluding that the "lengthy sentence was justified by the heinous and physical and emotionally damaging acts that [ ] Appellant was found to have committed, the need to protect the public from [ ] Appellant, [ ]Appellant's serious criminal history, and the [c]ourt's opinion that total confinement was necessary and proper.").

In light of the nature and circumstances of the offense, the history and characteristics of Appellant, the opportunity of the sentencing court to observe and interact with Appellant, the presentence investigation, and the jury's verdict, we cannot conclude the aggregate sentence was unreasonable or, as Appellant contends, the result of "ill-will." Accordingly, we affirm.

Appellant next avers that the trial court should have allowed his two minor sons to testify at trial to present "potentially exculpatory material evidence to contradict[ ] the victim's testimony" regarding when and where the abuse occurred. Appellant's Brief at 16. He contends that by quashing the subpoenas issued to compel the boys' testimony, the court violated his "[c]onstitutional right to exercise compulsory process, thereby depriving the

Defense of material witness testimony in the presentation of a defense to the charges." *Id*. at 18-19.

As Appellant notes, the Pennsylvania Constitution guarantees an accused the right "to have compulsory process for obtaining witnesses in his favor." Pa. Const. art. I, § 9. Our Supreme Court has addressed the right to obtain witness testimony as follows:

> The right to compulsory process encompasses the right to meet the prosecution's case with the aid of witnesses, and the right to elicit the aid of the Commonwealth in securing those witnesses at trial, both of which are fundamental to a fair trial. This constitutional right, though fundamental, is not, however, absolute. Evidentiary rules based on legitimate state interests which exclude certain witnesses or certain testimony are not inconsistent nor incompatible with the right to compulsory process.[ ] Accordingly, where certain witnesses' testimony would not be admissible at trial, the Constitution does not require that a defendant be given the right to secure the attendance of witnesses which he has no right to use. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Our inquiry is thus directed to the question of the admissibility of the testimony which would have been given by the two witnesses whom appellant requested to be subpoenaed.

*Commonwealth v. Jackson*, 324 A.2d 350, 354–55 (Pa. 1974) (internal footnote omitted).

It is well-settled that "[q]uestions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." *Commonwealth v. Russell*, 938 A.2d 1082, 1091 (Pa. Super. 2007) (citation omitted). An abuse of discretion is more than a mere error of judgment; rather, an abuse of

discretion will be found when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Commonwealth v. Busanet,*** 817 A.2d 1060, 1076 (Pa. 2002) (citation and quotation omitted).

In the instant case, prior to trial, the court ordered that Appellant's counsel be allowed to interview the boys. The guardian *ad litem* conducted the interview by posing questions prepared by Appellant's attorney. Appellant's attorney, the children's caseworker from Children and Youth Services, and Allentown Police Department detectives observed the interviews. Appellant's attorney then informed the court that he still wished to subpoena the boys to testify at trial for Appellant, despite the guardian *ad litem's* opposition to the subpoena.

The court quashed the subpoenas after concluding that (1) the boys were unable to determine any dates at all; (2) no solid dates were provided either by the victim or the victim's friend; and (3) the victim's mother testified that she and the victim had been staying at Appellant's residence off and on until November 7, 2012, when they moved out permanently and the victim did not return to Appellant's apartment. Trial Ct. Op. at 15.

Our review of the record indicates that the court's decision to prohibit the boys' testimony was not based on partiality, prejudice, bias, or ill-will. The trial court has provided a thorough review of the relevant evidence and

case law, and we affirm based on the trial court's opinion. **See** Trial Ct. Op. at 14-17 (concluding, *inter alia*, (1) "the Court was not persuaded that the boys would be able to establish a timeframe either disputing the one testified to by the victim [] or [her mother] due to the fact that they could not recall specific dates or even descriptions of the residence in question;" and (2) "testimony by the boys, which would be speculative at best, would present a risk of harm to the boys, given the representation from their guardian *ad litem* that their therapist(s) believed that contact with the Appellant would cause additional trauma.").

Appellant next argues that the court erred in denying his motion *in limine* to exclude testimony from Deputy Sheriff James E. Bonner. The testimony at issue pertained to Appellant's behavior during the preliminary hearing, *i.e.*, that while the victim was testifying about the abuse, Appellant was "fondling himself" with his pinkies while his hands were shackled at his waist. Appellant's Brief at 22-23, quoting N.T. Trial. Appellant avers that the testimony was "highly and unfairly prejudicial[.]" Appellant's Brief at 21.

The trial court has accurately and thoroughly addressed this issue and we affirm on the basis of its opinion. **See** Trial Ct. Op. at 17-19 ((1) noting, *inter alia*, the Commonwealth's argument that the testimony was relevant because it tended to show that Appellant was sexually aroused by the victim, which was the motive behind the alleged abuse, and (2) concluding the prejudice here did not outweigh the probative value of the testimony.).

In his final issue, Appellant challenges the sufficiency of the evidence supporting his designation as a SVP.

This Court will review a claim that the trial court relied upon insufficient evidence when designating a defendant as an SVP under the following standard:

> A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. The appropriate standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses. As a reviewing court, we may not weigh the evidence and substitute our judgment for that of the fact-finder. Furthermore, a fact-finder is free to believe all, part or none of the evidence presented.
>
> At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied.

*Commonwealth v. Haughwout*, 837 A.2d 480, 484 (Pa. Super. 2003) (citations and quotations omitted).

As our Supreme Court has made clear, this Court is limited to "simply assessing the legal sufficiency" of the evidence presented; we may neither reweigh the evidence nor require greater proof than is required by the statute. *Commonwealth v. Meals*, 912 A.2d 213, 214 (Pa. 2005). In assessing the legal sufficiency, this Court must consider the "expert opinion

that, to a reasonable degree of professional certainty, [Appellant] was a pedophile." *Id.* at 223. Our role as an appellate court does not permit us to pick apart, on appeal, the merits of that diagnosis. *Id.* The diagnosis itself is evidence, and any attack on the underlying merits of the opinion goes to "the weight, and not the sufficiency, of the expert's evidence." *Id.* at 224.

In the instant case, Judge Banach has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law, and discussing each of the factors considered in an SVP determination. After a careful review of Appellant's argument and the record, we affirm the trial court's determination that Appellant is an SVP on the basis of that Opinion. *See* Trial Court Op. at 19-24.

The parties are instructed to append a copy of the trial court's October 20, 2015 Opinion to all future filings.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2016

- 14 -

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     |

vs.          |   No.   2416/ 2013
           |          1337 EDA 2015

NELSON MARTINEZ,     |
       Appellant     |

## OPINION

**KELLY L. BANACH, J.:**

On July 7, 2013, the Appellant was arraigned on one count of Rape of a Child,[1] graded as a Felony of the First Degree; one count of Involuntary Deviate Sexual Intercourse with a Child,[2] graded as a Felony of the First Degree; one count of Aggravated Indecent Assault of a Child,[3] graded as a Felony of the First Degree; one count of Sexual Assault,[4] graded as a Felony of the Second Degree; one count of Corruption of Minors,[5] graded as a Felony of the Third Degree, and one count of Indecent Assault of a Child,[6] graded as a Misdemeanor of the First Degree. A jury trial began on August 4, 2014 and on August 7, 2014, the jury found the Appellant guilty of all counts of the Information. On April 8, 2015, after a Hearing held before the undersigned, the Appellant was deemed a Sexually Violent Predator and was sentenced to serve an aggregate sentence of not less than 43 ½ years nor more than 87 years of incarceration.

---

[1] 18 Pa.Con.Stat.Ann. §3121 §§C
[2] 18 Pa.Con.Stat.Ann. §3123 §§B
[3] 18 Pa.Con.Stat.Ann. §3125 §§B
[4] 18 Pa.Con.Stat.Ann.§3124.1
[5] 18 Pa.Con.Stat.Ann. §6301 §§A1ii
[6] 18 Pa.Con.Stat.Ann §3126 §§A7

2

On April 17, 2015, the Appellant filed a Post-Sentence Motion. On April 28, 2015, the Court denied the Post-Sentence Motion.

On May 7, 2015, the Appellant filed a Notice of Appeal in this matter. The Appellant filed a Concise Statement of Reasons Complained of on Appeal on August 5, 2015. This Opinion follows.

## SUMMARY OF THE FACTS

Iris Martinez, the mother of the victim in this matter, had been in a relationship with the Appellant since June of 2006. At that time, the victim, E.B., was four or five years old. After about a year of their relationship, E.B. began to refer to the Appellant as "Dad." In the fall of 2012, Ms. Martinez and the Appellant were spending time both in the same household as well as apart. As of mid-October, 2012, the Appellant was residing at 830 Walnut Street, Allentown, Lehigh County, Pennsylvania, with his 14 year old son. E.B. and two additional siblings resided with Ms. Martinez. E.B. would visit the Appellant at his home on the weekends.

On one particular weekend in mid-October, 2012, E.B. came to visit the Appellant. E.B. referred to the Appellant as "Dad." During her visit and while they were alone, the Appellant asked E.B. if she liked boys and knew how to kiss. She said yes and he demonstrated by kissing her hand. The Appellant laughed and then asked if E.B. wanted to learn how to "real" kiss. The Appellant took E.B. to the playroom downstairs where he proceeded to kiss her on the lips and attempted to "French" kiss her by sticking his tongue in her mouth. E.B. stopped him by refusing to open her mouth. At that point, the Appellant pulled down his pants and underwear, telling her that that was what a boy's penis looks like. E.B. left the room and went upstairs to the bathroom on the second floor.

3

Later the same day, the Appellant and E.B. were alone when he asked if she knew about masturbation and "cum." E.B. did not tell anyone, including her mother, about the incidents because she was scared of being punished by her mother and the Appellant and that the Appellant would hit her.

The next time E.B. visited the Appellant, E.B. came downstairs where the Appellant was sitting on the couch, watching television with his laptop on his lap. E.B.'s mother was in the home, but not in the room. The Appellant whispered to E.B. that he wanted to show her something. E.B. went over to the Appellant where he showed her pictures and videos of naked girls and boys kissing and touching each other. The Appellant asked if anyone had licked E.B.'s genitals. When she replied no, he instructed E.B. to pull down her pants, and let him try so she could experience how it feels. E.B. complied and the Appellant started to lick E.B.'s vagina, making E.B. feel disgusting. E.B. did not report this incident either, scared that her mother would think she was dirty.

When E.B. returned to the Appellant's house at a later date, the Appellant showed her a sex toy and lotion. E.B. asked what it was and the Appellant told her that it was a sex toy. The Appellant told E.B. to take the sex toy and see if it would fit inside her vagina. E.B. complied but the sex toy did not fit inside of her vagina. Later the same evening, while alone with the Appellant in his bedroom, the Appellant started talking to E.B. about masturbating and encouraged her to use the toy on herself. E.B. obeyed him because she was afraid he would tell her mother. The Appellant engaged the vibration function on the sex toy and moved E.B.'s hand and fingers in circles on her vagina. The Appellant masturbated as he watched E.B. touch herself. The Appellant put the lotion on E.B.'s vagina and told her how beautiful and nice she looked. The Appellant had ejaculated and showed E.B. the semen, telling her "this is

4

how a boy cums." Trial Tr. Vol. 1, 65:13-17 Aug. 5, 2014. Further, the Appellant discussed with E.B the intimacies of his relationship with E.B.'s mother. The Appellant also put his fingers inside of E.B.'s vagina.

On another occasion, E.B's best friend, K.R., and E.B. were spending time at the Appellant's home. The girls were in the living room when E.B. left to go into the kitchen. There, the Appellant asked E.B. if she thought that K.R liked sex toys. E.B. told him that he was not to touch K.R., but did agree to ask K.R. if she liked sex toys. K.R said no. Later, after the girls went upstairs, the Appellant commented to K.R. how much she had grown and how her breasts were developing. The Appellant lifted K.R.'s shirt up and touched her breast. The Appellant then did the same to E.B. The Appellant commented about E.B.'s nipples and put his mouth on her breast, stating that he was helping them grow. E.B. did not share this information with anyone because she was scared and ashamed. K.R. did not immediately tell anyone because she was scared.

On another evening, E.B. cried to the Appellant that she did not want to continue having sexual contact with him. The Appellant agreed, saying that they would go to Hell if they continued. E.B. then fell asleep and when she woke up, her pants and underwear were down. The Appellant told her, "you came five times." *Id.* at 68:24.

At some point in time, the Appellant took E.B. to two sex stores, Cupid's Treasures in Bethlehem, Pennsylvania and another establishment in Allentown, Pennsylvania between the hours of midnight and one in the morning. At Cupid's Treasure, the Appellant instructed E.B. to wait in the car. When the Appellant returned, he had a box of chocolate, strawberry, and vanilla packets and a dildo. The Appellant then took E.B. to the store in Allentown.

5

On yet another occasion, the Appellant placed his penis inside of E.B.'s anus. Though she complained that it hurt, the Appellant told her that she would get used to it. This happened two or three times.

Another time, E.B. asked the Appellant if she could have a play piece to the game Minecraft. He replied that she had to earn it by keeping his penis in her mouth for one minute and thirty seconds. E.B. initially said no, but ultimately did this three or four times.

E.B.'s mother, Iris Martinez, had been in a relationship with the Appellant since June of 2006, when E.B. was four or five years old. After about a year of their relationship, E.B. began to refer to the Appellant as "Dad." In the fall of 2012, Ms. Martinez and the Appellant were spending time both in the same household as well as apart. In November of 2012, Ms. Martinez began to notice that E.B. was not as social as she was before.

On January 29, 2013, E.B. was helping the Appellant wrap a present for her younger brother's birthday at E.B.'s residence. At that time, the Appellant remarked that E.B.'s breasts were developing and E.B. became angry. The birthday party continued until the Appellant left the residence in the evening. Noticing that E.B. had been crying, Ms. Martinez asked her what was wrong. E.B. finally told her mother that the Appellant had been touching her. Shortly thereafter, Ms. Martinez called the Appellant and summoned him back to her apartment. The Appellant denied having ever touched E.B. inappropriately.

At that time, Ms. Martinez recalled finding a pink sex toy in the Appellant's bedroom closet while putting laundry away during the last week of October, 2012. Believing that the Appellant was using it in a relationship with another woman, Ms. Martinez took the sex toy and brought it back to her apartment. Ms. Martinez washed

6

the sex toy, and at some point later in time, used the sex toy herself and then hid it in her closet. She did not take it back out of the closet again until detectives came to interview E.B.

On February 14, 2013, Ms. Martinez contacted the authorities to report the abuse. Ms. Martinez also arranged for E.B. to spend time with a family friend, Kristine Hernandez, to see if E.B. would reveal details of the abuse to Ms. Hernandez.

Ms. Hernandez met with E.B. at Ms. Hernandez's apartment to speak to her a few days after E.B. disclosed the abuse to her mother. E.B. was extremely upset, and related the abuse while crying uncontrollably. Ms. Hernandez surreptitiously had called Ms. Martinez on the telephone so that she could hear what E.B. was describing. E.B. detailed the abuse for Ms. Hernandez.

Ms. Hernandez acknowledged that she also used the sex toy on one occasion, prior to E.B. telling her about what had occurred with the Appellant.

On March 5, 2013, E.B. reported to the Child Advocacy Center and underwent a medical examination by Megan Fairchild, a pediatric nurse practitioner. The medical examination included a physical examination and a medical interview, as well as taking photographs. Ms. Fairchild authored a report, which was reviewed by Dr. John Van Brakle, an expert in the area of pediatric medicine. On March 14, 2013, Dr. Van Brakle performed a physical examination of E.B's vaginal and rectal areas. He determined there were two lacerations in the rectal area, which would be consistent with anal penetration by a penis having taken place in late October or early November 2012. Regarding the vaginal exam, Dr. Van Brakle determined that E.B.'s exam was normal, which would have been consistent with the time period of abuse outlined by E.B.

The Appellant denied ever touching E.B. inappropriately. He stated that he treated E.B. as his own daughter, having raised her since she was 4 years old. Specifically, the Appellant denied raping E.B., touching her genitals, forcing E.B. to use a sex toy, and showing E.B. his genitals. Further, he denied having touched E.B.'s friend, K.R. The Appellant opined that the accusations made by E.B. and K.R. were the result of a "woman scorned," referring to his tumultuous relationship with E.B.'s mother.

Upon conviction, the Appellant underwent a Sexual Offender Assessment Evaluation, which determined that he does meet the criteria for Sexually Violent Predator. Thereafter, the Commonwealth did file a praecipe to classify the defendant as a Sexually Violent Predator. The Appellant, after requesting and being provided funds, had an independent psychological evaluation performed by Dr. Frank Dattilio. The results of the independent evaluation were not presented at the time of sentencing. At the conclusion of the Sentencing Hearing on April 8, 2015, the Appellant was found to meet the criteria for a Sexually Violent Predator and was sentenced to an aggregate sentence of not less than 43 and a half years nor more than 87 years of incarceration.

DISCUSSION AND CONCLUSIONS OF LAW

The Appellant avers the following on Appeal:

> 1) That the aggregate sentence issued by this Court of 43 and ½ years to 87 years was "excessive, unreasonable and unduly harsh, and was an abuse of discretion."
> 2) That the Court erred by prohibiting the testimony of juvenile witnesses, Noah and Moses Martinez, who would have offered potentially exculpatory material evidence;
> 3) That the Court erred in denying the Appellant's Motion in Limine to Exclude Testimony of Deputy Sheriff James E. Bonner pursuant to Pa.R.Evid. 401 and 403, "as such testimony was irrelevant, speculative, conjectural, unsupported by scientific or expert opinion and was far more prejudicial to Defendant than it was probative;" and,

8

4) That the classification of the Appellant as a Sexually Violent Predator was in error.

App. Concise Stmt., ¶1-4.

*Harsh and Excessive Sentence*

As a preliminary matter, there is no absolute right to appeal the discretionary aspects of a sentence. See *Commonwealth v. Mouzon*, 571 Pa. 419, 425, 812 A.2d 617, 621 (2002). A prerequisite to a challenge of the discretionary aspects of sentencing requires that an Appellant first raise specific issues of error either during the sentencing proceeding or in a post-sentence motion to modify sentence. See *Commonwealth v. Reeves*, 778 A.2d 691 (Pa. Super. 2001). The Appellant satisfied this requirement by filing a Post-Sentence Motion on April 17, 2015, which was denied by the Court on April 28, 2015.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Minott*, 395 Pa. Super. 552, 555, 577 A.2d 928, 929 (1990), citing *Commonwealth v. Fries*, 362 Pa. Super. 163, 523 A.2d 1134 (1987). To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. *Mouzon*, 571 Pa. at 419, 812 A.2d at 617 (2002). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996)(internal citations omitted).

Unless a minimum period of confinement is statutorily required, "the trial court is authorized to choose one or more of five options as an appropriate sentence - guilt without penalty, probation, fine, partial confinement, and total confinement."

9

*Commonwealth v. Tuladziecki*, 522 A.2d 17, 20 (Pa. 1987)(citing 42 Pa.Cons.Stat. §9721(a)). In general, the sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the [Appellant]." 42 Pa.Cons.Stat. §9721(b). See *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007). However, these factors are in no way exclusive, and a sentencing court is entitled to consider the totality of circumstances when making its decision. "The court shall also *consider* any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing)." *Walls* at 963 (italics added).

"Along with these general standards . . . the court is given more specific criteria to consider with respect to each of the alternatives. Thus, total confinement should be imposed if *the court is of the opinion* that it is necessary because of a risk that the [Appellant] will commit another crime, because institutionalization would provide the most effective correctional treatment, or because anything less would depreciate the seriousness of the crime. Further, the court's opinion is to be guided by considering 'the nature and circumstances of the crime and the history, character and condition of the [Appellant].'"42 Pa.Cons.Stat. §9725. *Tuladziecki* at 20. Given the general outline of considerations provided in 42 Pa.Cons.Stat. §9721 and §9725, it is clear that the Pennsylvania legislature has vested broad discretion in the trial court to fashion a sentence that is appropriate given the particular set of facts and circumstances for the individual case at bar.

Sentencing guidelines are considered to be non-binding and advisory in nature, although they must be considered by the sentencing court. See *Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007). Therefore, an appellant court will "vacate a

10

sentence and remand to the sentencing court if 'the sentencing court sentenced outside the sentencing guidelines and the sentence is *unreasonable.*' *Smith* at 895, citing 42 Pa.C.S. § 9781(c)(3) (emphasis added). However, "[i]n all other cases the appellate court shall affirm the sentence imposed by the sentencing court." *Smith* at 895; 42 Pa.C.S. § 9781(c).

In the case at bar, the Appellant was found guilty by Jury of each count of the Information. In anticipation of sentencing, the Court reviewed the Pre-Sentence Report prepared by the Lehigh County Office of Probation and Parole. Attached thereto were sentencing guidelines, the affidavit of probable cause, the victim impact statement, a copy of a memo from the jail which indicated that the Appellant had no misconducts and did not participate in any programs, activities or employment, and a victim impact statement from the victim's mother.[7] Counsel for the Appellant made objections to certain statements contained within the PSI and brought the Court's attention to those objections at the time of the Sentencing Hearing.

In addition, the Court received a copy of the Sexual Offender Evaluation conducted by Paula Brust of the Sexual Offender Assessment Board, which contained the conclusion that the Appellant was a Sexually Violent Predator (hereinafter "SVP"). Counsel for the Commonwealth and for the Appellant stipulated to the admissibility of the report, but not to the content or conclusions contained therein. Defense counsel argued that the Appellant should not be classified as a SVP based on the fact that the Appellant's medical and criminal history did not indicate that he had a mental health abnormality or condition. He had not undergone any treatment for any mental abnormality or conditions either and that essentially, the conclusion reached by Ms.

---

[7] The Appellant and his counsel received all of the same attachments, absent the victim impact statements of the victim and her mother. The Appellant was provided an opportunity to review those statements at the time of the Sentencing Hearing.

11

Brust was based on the findings of fact made by the Jury. The Commonwealth argued that the analysis which led to the Appellant's classification as an SVP was more than an examination of the facts found to be true by the Jury. Rather, the evaluator considered the fact that over a period of at least six months, the Appellant had recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving sexual activity with a prepubescent child or children generally age 13 or younger, that the Appellant acted on these sexual urges or fantasies, and that the age of the Appellant and his victims were consistent with the criteria for Pedophilic Disorder, which "will cause him to experience an internal drive towards sexual offending and his disorder predisposes him towards committing sexual crimes in the future." See Exhibit C-1, p.9. The evaluator also noted that the presence of multiple victims (E.B. and K.R.) is sufficient but not necessary for the diagnosis. The evaluator highlighted that the Appellant groomed and bribed E.B. and attempted to normalize the sexual activity. E.B. indicated that she was afraid of the Appellant.

At the conclusion of the Sentencing Hearing, the Court sentenced the Appellant to serve an aggregate sentence of no less than 43½ years nor more than 87 years of incarceration. The Appellant is unable to show that the sentence constituted an abuse of discretion. The sentence did not exceed the statutory limits and was not "manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *Smith* at 895. Rather, the Court carefully weighed the sentencing factors, including the protection of the public, the gravity of the offense on the victim and the community, and the rehabilitative needs of the Appellant. Without question, the crimes the Appellant was convicted of were among the most heinous and despicable. He acted on his own sexual urges and desires, consistent with an individual suffering from Pedophilic Disorder, without regard to the short and long term effect he was having on

12

E.B. and transitively, on the lives of his other children. Anything short of total confinement, for a substantial amount of time, would depreciate the seriousness of the crimes committed on the most vulnerable of victims.

While the Appellant has no prior sexual assaults as part of his criminal history, this is most certainly not his first brush with serious criminal actions. Among his convictions are attempted burglary, conspiracy to possession with intent to deliver, and possession with intent to deliver. His crimes in the past were serious and significant. The Court was also able to get a sense of the Appellant's character and condition at the time of trial and during the sentencing hearing. Although he is entitled to maintain his innocence even in the face of overwhelming testimonial evidence to the contrary, the Appellant treated the Court and the entire judicial process with disdain and disrespect, constantly speaking over his attorney, the attorney for the Commonwealth, and the Court. He spoke disparagingly of the victim's mother, his wife, calling her a liar. He accused the District Attorney's Office and the investigating agencies of fabricating evidence in order to establish high conviction rates. He took absolutely no responsibility for what happened to the 12 year old victim.

The Court's lengthy sentence was justified by the heinous and physically and emotionally damaging acts that the Appellant was found to have committed, the need to protect the public from the Appellant, the Appellant's serious criminal history, and the Court's opinion that total confinement was necessary and proper. Without evidence of an abuse of discretion, the Appellant's claim of an excessive and harsh sentence ought to fail.

13

*Testimony of Juvenile Witnesses*

The Appellant next avers that the Court erred in prohibiting the testimony of the Appellant's two minor children, N.M. and M.M. It is his belief that their testimony would have been exculpatory in nature.

By way of background, the Appellant's attorney, Glenn Goodge, Esquire, issued subpoenas to the juveniles, care of their guardian ad litem Catherine Kollet, Esquire. Attorney Kollet became guardian ad litem for the two boys after they were placed into the custody of the Lehigh County Office of Children and Youth Services on March 12, 2013. Prior to that date, the boys were living with the Appellant, who had sole legal and physical custody. On March 12, 2013, it was determined that the Appellant had left the area in the wake of charges being filed in the instant matter.

Attorney Goodge had requested to speak with the boys via Attorney Kollet, who denied him access, stating that she did not believe it would be in the boys' best interest. As they were therefore "unavailable" to the defense, Attorney Goodge appealed to this Court to determine if he ought to be permitted to speak to the boys as material witnesses. At the time, Attorney Goodge believed that the boys would testify that on the dates alleged, E.B. did not visit the Appellant at the apartment at 830 Walnut Street.

Attorney Kollet, during a Hearing on August 4, 2014, on the eve of Trial, argued that she objected to the boys being interviewed because she believed it was not in their best interest. She cited the concept of "trauma bond," wherein the children had experienced "such trauma that they are overly attached and it would do harm to them to make contact." Notes of Testimony, Aug. 4, 2014, p.10. At the conclusion of the hearing, the Court ordered that Attorney Goodge be provided an opportunity to interview the boys.

14

On August 6, 2014, the boys participated in an interview whereby Attorney Kollet posed questions prepared by Attorney Goodge. Attorney Goodge observed the interview, as well as a Children and Youth Caseworker and Detectives John Buckwalter and Melissa Gogel of the Allentown Police Department, the affiants in this case. After making his observations, Attorney Goodge informed the Court that he still wished to subpoena the boys to testify at trial for the Appellant. He further represented to the Court that Attorney Kollet, as guardian ad litem for the boys, opposed the subpoena.

While the jury was in recess, the Court heard from Attorneys Kollet and Goodge regarding the subpoena for the boys' testimony. Attorney Goodge represented that during the interview, both of the boys stated that E.B. did not visit the Appellant at 830 Walnut Street after she and her mother moved out of the residence and further stated that K.R. had never visited the apartment after E.B. and her mother left. Neither of the boys could remember specific dates nor could either describe the house that they lived in at the time. Attorney Goodge asserted that the boys' belief that no visits had taken place after E.B. and her mother moved out was material and relevant to the Appellant's case.

The Court was able to recall from the previous days' testimony that E.B. and K.R. were unable to testify regarding concrete dates of the incidents with the Appellant. Further testimony from E.B.'s mother, Iris Martinez, indicated that although she had secured another residence, she and E.B. had been staying at the Appellant's residence off and on until November 7, 2012, when they moved out and E.B. did not return to the Appellant's apartment. Therefore, because the boys were unable to determine any dates at all, and no solid dates were provided either by E.B. or by K.R., the Court was not persuaded that a clear time frame had been established

15

regarding when the boys stopped seeing E.B. and/or K.R. at the apartment on Walnut Street. In the Court's belief, to compel the boys to testify to facts that were speculative at best presented too great a risk of additional trauma. Hence, the subpoena for the boys to testify was quashed.

Under both the Pennsylvania and Federal Constitutions, "a criminal defendant has a right of compulsory process to obtain witnesses in his favor." *Commonwealth v. McKenzie*, 581 A.2d 655, 657 (Pa. 1990)(citing *Commonwealth v. Lahoud*, 488 A.2d 307, 310 (Pa.Super. 1985) (allocatur denied), quoting *Commonwealth v. Allen*, 462 A.2d 624, 627 (Pa. 1983)). See also *Commonwealth v. Jackson*, 324 A.2d 350, 354-355 (1974. A criminal defendant "has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.'" *McKenzie* at 657, citing *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). "[The] constitutional right, though fundamental, is not, however, absolute." *Commonwealth v. Jackson* at 355. "In order to compel the attendance of a witness at trial, it must be shown that the information possessed by the witness is material, i.e., capable of affecting the outcome of the trial, and that it is favorable to the defense." *McKenzie* at 657, citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, (1982).

"When reviewing a court's disposition of a motion to quash a subpoena, [an appellate court will] grant great deference to the factual findings of the trial court. [It] will affirm the court's decision unless [it finds] that the court abused its discretion or committed an error of law." *Commonwealth v. Simmons*, 719 A.2d 336, 340 (Pa.Super. 1998). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of

16

partiality, prejudice, bias, or ill-will." *Commonwealth v. Jackson*, 785 A.2d 117, 118 (Pa.Super.2001).

Here, the Court did not abuse its discretion. As stated above, the Court was not persuaded that the boys would be able to establish a timeframe either disputing the one testified to by E.B., K.R., or Ms. Martinez due to the fact that they could not recall specific dates or even descriptions of the residence in question. Further, the Court believed testimony by the boys, which would be speculative at best, would present a risk of harm to the boys, given the representation from their guardian ad litem that their therapist(s) believed that contact with the Appellant would cause additional trauma. The decision was not based on partiality, prejudice, bias, or ill-will and was not manifestly unreasonable. Therefore, this portion of the Appeal ought to be dismissed.

*Testimony of Deputy Sheriff*

Next, the Appellant argues that the Court erred in denying the Appellant's Motion in Limine to Exclude Testimony of Deputy Sheriff James E. Bonner pursuant to Pa.R.Evid. 401 and 403, in that the testimony was irrelevant, speculative, conjectural, unsupported by scientific or expert opinion and was far more prejudicial to Appellant than it was probative. The testimony in question refers to Deputy Bonner's observations of the Appellant at his preliminary hearing. Specifically, Deputy Bonner, while standing at a 45 degree angle and an arm's length away from the Appellant, observed that while E.B. was testifying, the Appellant reached down to his crotch area and used his two small fingers to rub himself in the crotch area, numerous times with each time lasting under a minute. The deputy described the actions of the Appellant as "fondling himself." At the time, the Appellant's hands were

17

shackled to his front waist area. It continued until the deputy motioned to the Appellant to stop.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Stutler*, 966 A.2d 594, 599 (Pa.Super.2009), citing *Commonwealth v. Treiber*, 874 A.2d 26, 31 (Pa. 2005). "Admissibility depends on relevance and probative value." *Id.* "Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." *Commonwealth v. Foley*, 38 A.3d 882, 891 (Pa.Super. 2012). "Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice." *Commonwealth v. Franzen*, 42 A.3d 1100, 1106 (Pa.Super. 2012)(citing *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa.Super.2009)).

"Determinations about the admissibility of evidence are entrusted to the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Parker*, 882 A.2d 488, 492 (Pa.Super. 2005)(citation omitted). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)(citing *Coker v. S.M. Flickinger Company, Inc.*, 625 A.2d 1181, 1185 (Pa. 1993).

The Appellant is unable to show an abuse of discretion. At the Motion in Limine Hearing, held on August 4, 2014, counsel for the Appellant argued that Deputy Bonner's testimony was irrelevant and highly prejudicial. He asserted that the preliminary hearing was held over a year after the alleged incidents were to have taken

18

place, that there was no expert opinion regarding whether the Appellant was actually engaged in sexual arousal at the time he was observed by the deputy, or if he was merely uncomfortable. The Commonwealth argued that the testimony was relevant in that it tended to show that the Appellant was sexually aroused by the victim, E.B., which was the motive behind the alleged abuse. Further, the Commonwealth suggested that the deputy would only be testifying about his observations of the Appellant at the preliminary hearing and that other reasons behind the Appellant's behavior could be ferreted out on cross-examination.

The Court determined that the testimony of the deputy was relevant to show that the Appellant reacted to E.B.'s testimony at the preliminary hearing by, in the deputy's observation and analysis, fondling himself. Defense counsel was able to cross examine Deputy Bonner regarding his observation of the Appellant and to make argument that the deputy's observation was erroneous. While every piece of evidence tending to show a defendant's guilt is prejudicial by its very nature, the prejudice here did not outweigh the probative value of the testimony of the deputy. The record cannot support the Appellant's argument that the Court's decision was based on partiality, bias, prejudice or ill will. Therefore, the Appellant's argument fails and this portion of the Appeal ought to be dismissed.

*Classification as a Sexually Violent Predator*

"[I]n reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." *Commonwealth v. Plucinski,* 868 A.2d 20, 25 (Pa.Super. 2005)(citations omitted). "The clear and convincing standard requires evidence that is 'so clear, direct, weighty and convincing as to

19

enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'" *Plucinski* at 25, citing *Commonwealth v. Maldonado*, 838 A.2d 710, 715 (2003)(internal citation omitted).

"Pennsylvania's version of Megan's Law defines an SVP as 'a person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.'" *Commonwealth v. Geiter*, 929 A.2d 648, 649-650 (Pa.Super. 2007)(citing 42 Pa. Cons.Stat. Ann. § 9792). "The process of determining SVP status is statutorily-mandated and well-defined. The triggering event is a conviction for one or more offenses specified in 42 Pa.C.S.A. § 9795.1, which, in turn, prompts the trial court to order an SVP assessment by the [Sexual Offenders Assessment Board]." *Commonwealth v. Dixon*, 907 A.2d 533, 535 (Pa.Super 2006)(citations omitted). "At the core of the expert's assessment is a detailed list of factors, which are mandatory and are designed as "criteria by which ... [the] likelihood [of reoffense] may be gauged." *Id.* at 535-536 (citing *Commonwealth v. Bey*, 841 A.2d 562, 566 (Pa.Super.2004)).

"The specific question for the SOAB expert, as well as any other expert who testifies at an SVP hearing, is whether the defendant satisfied the definition of sexually violent predator set out in the statute, that is, whether he or she suffers from 'a mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses.'" *Dixon* at 536, citing 42 Pa.C.S.A. § 9792. Therefore, "the salient inquiry . . . in determining SVP status is identification of the impetus behind commission of the offense, that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question

20

determines, at least theoretically, the extent to which the offender is likely to reoffend." *Bey* at 566. The assessment conducted by the SOAB Evaluator shall include, but not be limited to, an examination of the following:

> (1) Facts of the current offense, including:
>> (i) Whether the offense involved multiple victims.
>> (ii) Whether the individual exceeded the means necessary to achieve the offense.
>> (iii) The nature of the sexual contact with the victim.
>> (iv) Relationship of the individual to the victim.
>> (v) Age of the victim.
>> (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
>> (vii) The mental capacity of the victim.
> (2) Prior offense history, including:
>> (i) The individual's prior criminal record.
>> (ii) Whether the individual completed any prior sentences.
>> (iii) Whether the individual participated in available programs for sexual offenders.
> (3) Characteristics of the individual, including:
>> (i) Age of the individual.
>> (ii) Use of illegal drugs by the individual.
>> (iii) Any mental illness, mental disability or mental abnormality.
>> (iv) Behavioral characteristics that contribute to the individual's conduct.
> (4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

>> *Commonwealth v. White*, 2014 WL 6391088,
>> *4-5 (Pa.Com.Pl. 2014), citing 42 Pa.C.S. §
>> 9799.24(b)(1)-(4).

"[W]ith regard to the various assessment factors listed in Section 9795.4, there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. *Meals*, 912 A.2d at 220–23. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation." *Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa.Super. 2008)(citing *Commonwealth v. Meals*, 912 A.2d 213, 220-223 (2006)).

Upon conviction, the Appellant underwent a Sexual Offender Assessment Evaluation, which determined that he does meet the criteria for Sexually Violent

21

Predator (hereinafter "SVP"). The Evaluation was performed by Paula Brust of the Sexual Offender Assessment Board and both counsel stipulated to the admissibility of the Report for consideration by the Court.[8]

Ms. Brust's report identified the specific factors leading to her determination that the Appellant is, indeed, an SVP. Ms. Brust acknowledged that the instant crimes did not involve multiple victims, but did note the duration and multiple types of sexual acts and their progression from kissing to raping on repeated occasions. She also noted that the Appellant was able to groom the victim, bribe her, and intimidate her to comply. Medical evidence of blunt penetrating trauma existed as well. Ms. Brust noted that the victim was 10 years old at the time the offenses started and the Appellant was her stepfather, a "relationship of trust and dependency and he twisted that relationship in order to satisfy his sexual deviancies." Exhibit C-1, p.6. The evaluator found that the victim was vulnerable due to her age and was not capable of consenting to the sexual acts forced upon her. *Id.*

The Appellant has suffered five adult convictions, none of which were sexual crimes. Ms. Brust determined that the Appellant was a technical parole violator and had violated probationary and parole sentences due to compliance issues. *Id.* at 7.

Ms. Brust considered that the Appellant was 44 years old at the time he offended against his 10 year old stepdaughter and that in addition to selling illegal narcotics in the past, he has abused marijuana since the age of 12 and cocaine since the age of 19. It was unknown if the Appellant was using illegal narcotics at the time of the offenses. The Appellant's Department of Corrections (hereinafter "DOC") records indicated that he has exhibited a Low Average Range of Intelligence and that

---

[8] The Appellant, after requesting and being provided funds, had an independent psychological evaluation performed by Dr. Frank Dattilio. The results of the independent evaluation were not presented at the time of sentencing.

he exhibited narcissistic and delusional qualities. The DOC records found the Appellant to have little or no respect for social standards and that he is often in direct conflict with social values. After evaluating the available records, the Appellant was found to meet the diagnostic criteria for Pedophilic Disorder.

Specifically, Ms. Brust considered the fact that over a period of at least six months, the Appellant had recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving sexual activity with a prepubescent child or children generally age 13 or younger, that the Appellant acted on these sexual urges or fantasies, and that the age of the Appellant and his victims were consistent with the criteria for Pedophilic Disorder, which "will cause him to experience an internal drive towards sexual offending and his disorder predisposes him towards committing sexual crimes in the future." See Exhibit C-1 at 9. The evaluator also noted that the presence of multiple victims (E.B. and K.R.) is sufficient but not necessary for the diagnosis. The evaluator highlighted that the Appellant groomed and bribed E.B. and attempted to normalize the sexual activity. E.B. indicated that she was afraid of the Appellant.

Ms. Brust ultimately concluded that the Appellant met the "full criteria for Pedophilic Disorder, which is considered to be a congenital and/or acquired condition." Exhibit C-1 at 9. Such disorder is considered to be a lifetime disorder. In offending against the victim, and being aware of the potential consequences, the Appellant repeatedly sexually offended a child. The diagnosis of Pedophilic Disorder will cause the Appellant "to have an internal drive toward sexual offending and predisposes him towards committing sexual crimes in the future." Id.

The Appellant's actions were predatory in nature in that they were "directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support

23

victimization." *Feucht* at 381, citing 42 Pa.C.S.A. § 9792. The offenses demonstrated planning and intent and showed a "definite progression over time and a sustained interest in this child. He even bought a sex 'toy' for her and forced her to use it inside her anus and vagina at the same time." Exhibit C-1 at 10. Further, he used grooming techniques to intimidate her and ensure secrecy. *Id.* In Ms. Brust's opinion, the Appellant would not have stopped his offending behavior had the offenses not come to light.

Case law establishes that "every Commonwealth expert who testifies that an individual is an SVP must examine, and render an opinion on, whether the individual is likely to re-offend. [However], the precise manner of meeting this burden is not analyzed in terms of a strict, three-prong test." *Dixon,* 907 A.2d at 539 (referring to *Commonwealth v. Krouse,* 799 A.2d 835, 837 (Pa.Super.2002)). "[W]hile the Board is to examine all the factors listed under Section 97954.4, the Commonwealth does not have to show that any certain factor is present or absent in a particular case." *Commonwealth v. Brooks,* 7 A.3d 852, 863 (Pa.Super. 2010)(citing *Feucht* at 381).

After careful review of the report submitted by Ms. Brust, the Court concluded, by clear and convincing evidence, that the Appellant met the criteria set forth in the statute to be classified as a sexually violent predator. In the report, she discussed nearly all of the factors identified in the Megan's Law Statute and explained how the Appellant fit into each category. Ms. Brust was able diagnose the Appellant with Pedophilic Disorder and that the offenses committed were motivated by the disorder. Further, Pedophilic Disorder will make the Appellant likely to reoffend. Given the evidence presented at the time of Sentencing, the Court did not err in designating the Appellant an SVP.

24

## CONCLUSION

For all of the foregoing reasons, the Court would urge the Superior Court to dismiss the instant Appeal.

By the Court:

Kelly L. Banach, J.